DECISION AND JOURNAL ENTRY
 INTRODUCTION {¶ 1} Matthew Morgan was convicted of two counts of gross sexual imposition for grabbing the crotch and breast of his fiancée's friend. He has appealed, arguing that: (1) his convictions are not supported by sufficient evidence; (2) his convictions are against the manifest weight of the evidence; (3) he was prejudiced by prosecutorial misconduct; (4) the trial court admitted improper lay witness opinion testimony; (5) the trial court admitted improper hearsay testimony; and (6) he was denied effective assistance of counsel. This Court affirms Mr. Morgan's convictions because: (1) they are supported by sufficient evidence; (2) they are not against the manifest weight of the evidence; (3) any improper statements by the prosecutor did not affect his substantial rights or deprive him of a fair trial; (4) the lay witness testimony regarding Mr. Morgan's intoxication on the night of the incident was proper; (5) the officer's *Page 2 
testimony regarding what the victim reported on the night of the incident was properly admitted as an excited utterance; and (6) Mr. Morgan was not denied effective assistance of counsel.
 BACKGROUND {¶ 2} On the day of the incident, Sasha Vormelker planned to pick up Mr. Morgan's fiancée so Mrs. Vormelker, her sister-in-law, the fiancée, and their children could watch movies at Mrs. Vormelker's house. Mrs. Vormelker testified that, when she arrived at the fiancée's trailer, she knocked at the door and Mr. Morgan told her to come in. When she opened the door, she stepped directly into a living room area and found Mr. Morgan sitting on a couch to the left. She testified that another man was sleeping on another couch, but judging by the beer cans she saw all around, she thought he might have been passed out. Mr. Morgan's fiancée was not there.
 {¶ 3} According to Mrs. Vormelker, Mr. Morgan offered her a piece of paper that he claimed contained a telephone number where his fiancée could be reached. She testified that, when she approached Mr. Morgan to take the number, he "[g]rabbed [her] through [her] sweatpants in the crotch area." She said that she "turned around and pulled away and [the sweatpants] ripped, and two of his fingers went up a little bit." She testified that she was not wearing any underwear and when she pulled away from Mr. Morgan she "felt a bit of an insertion of . . . fingers." According to her, when Mr. Morgan grabbed her, he said, "[c]ome on, come on, no one needs to know."
 {¶ 4} Mrs. Vormelker said that she went toward the door to leave, but Mr. Morgan stood up and grabbed her right arm with his left hand and "stuck his right hand down [her] shirt . . . [and] touch[ed] . . . [her] breast." According to her, Mr. Morgan continued saying, "[c]ome on, come on" while groping her. Mrs. Vormelker testified that Mr. Morgan's speech was slurred and, based on the way he was walking and acting, she believed him to be intoxicated. *Page 3 
 {¶ 5} When she arrived home, her sister-in-law, Sarah, was waiting. Sarah testified that when Mrs. Vormelker returned she was in tears and could not catch her breath. She told Sarah that Mr. Morgan had touched her crotch and her breasts. Sarah left the house to get Mrs. Vormelker's husband and a police officer. When Sarah left, Mrs. Vormelker called another friend and relayed the story again. When Sarah returned with a police officer, Mrs. Vormelker reported the incident and gave him a written statement.
 {¶ 6} The police officer testified that, when he arrived at Mrs. Vormelker's house, she was "hysterical and crying." The officer asked her to go to the hospital so that evidence could be collected. According to Mrs. Vormelker, she reported the incident again to hospital staff and submitted to an examination that did not reveal any medical evidence of sexual contact. She declined to travel to Akron to submit to a full rape kit evaluation. Mr. Morgan did not offer any evidence at trial.
 SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE {¶ 7} Mr. Morgan's first assignment of error is that each of the convictions for gross sexual imposition is not supported by sufficient evidence and is against the manifest weight of the evidence. He has argued that: (1) there was not proof beyond a reasonable doubt that two instances of gross sexual imposition occurred, (2) "there was not proof beyond a reasonable doubt that the grabbing [i.e. alleged sexual contact] . . . [met] the definition of `sexual contact,'" and (3) there was not sufficient proof of any crime because the victim's testimony was inconsistent.
 {¶ 8} Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo. State v.Thompkins, 78 Ohio St. 3d 380, 386 (1997); State v. West, 9th Dist. No. 04CA008554, 2005-Ohio-990, at ¶ 33. This Court must determine whether, *Page 4 
viewing the evidence in a light most favorable to the prosecution, it would have convinced an average fact finder of Mr. Morgan's guilt beyond a reasonable doubt. State v. Jenks, 61 Ohio St. 3d 259, paragraph two of the syllabus (1991). When a defendant argues that his conviction is against the manifest weight of the evidence, this Court "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Otten, 33 Ohio App. 3d 339, 340 (1986).
 TWO COUNTS OF GROSS SEXUAL IMPOSITION {¶ 9} Mr. Morgan was convicted of two counts of violating Section 2907.05(A)(1) of the Ohio Revised Code. That section provides that, "[n]o person shall have sexual contact with another, not the spouse of the offender . . . when . . . [t]he offender purposely compels the other person . . . to submit by force or threat of force." "Sexual contact" has been defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).
 {¶ 10} Mr. Morgan has argued that he was improperly convicted of two counts of gross sexual imposition based on one continuous act against one victim. He has emphasized that Mrs. Vormelker testified that he did not let her out of his grasp the entire time.
 {¶ 11} Section 2941.25(B) of the Ohio Revised Code provides that, "[w]here the defendant's conduct . . . results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them." The Ohio *Page 5 
Supreme Court has set forth a two-pronged test to determine whether multiple counts should be merged. State v. Blankenship,38 Ohio St. 3d 116, 117 (1988). First, the court must determine whether "the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other. . . ." Id. If so, then the court must consider whether "the crimes were committed separately or [whether] there was a separate animus for each crime," in which case, "the defendant may be convicted of both offenses." Id.
 {¶ 12} Mr. Morgan was convicted of two counts of gross sexual imposition committed against the same victim during one brief episode. As the elements of the two convictions are identical, the question is whether "the crimes were committed separately or [whether] there was a separate animus for each crime." Id.
 {¶ 13} The facts in this case are analogous to those before the Ohio Supreme Court in State v. Barnes, 68 Ohio St. 2d 13 (1981). In that case the Supreme Court held that, "under Section 2941.25(B), entry into two bodily orifices constitutes two separate rape offenses of the same or similar kind for both of which a defendant may be convicted."Id. at 14. In Barnes, each defendant moved quickly from one type of rape to the next. In holding that each type of rape supported a separate conviction, the Supreme Court relied on the fact that rape may be proven under Ohio law via various forms of forcible "sexual conduct" as defined by Section 2907.01(A). Id.; see also id. at 15 (Celebrezze, C.J., concurring) ("Each act violated a different area of the victim's body. Each act subjected the victim to a different kind of injury, pain, danger, fear and humiliation.").
 {¶ 14} Similarly, the forcible "[s]exual contact" required for a gross sexual imposition conviction may take several different forms under the statute, including touching a woman's pubic region or breast. See R.C. 2907.01(B). Just as the defendants in Barnes were each *Page 6 
convicted of two counts of rape for committing both forcible vaginal intercourse and fellatio against one victim during one brief episode, Mr. Morgan may be properly convicted of two counts of gross sexual imposition for touching two erogenous zones of one victim during one brief episode. The sexual contact of touching the victim's breast was not necessary for the completion of the sexual contact of touching the victim's crotch and each act violated Section 2907.05(A)(1) of the Ohio Revised Code. See State v. Egantoff, 9th Dist. No. 9926, 1981 WL 3953 at *2 (Apr. 22, 1981) ("Two separate parts of the body were involved and each act could have been completed without performing the other act.").
 {¶ 15} Viewing the evidence in the light most favorable to the prosecution, Mrs. Vormelker's testimony was sufficient to support two convictions for gross sexual imposition. Additionally, reasonable jurors could have believed Mrs. Vormelker's testimony. The jury did not lose its way and create a manifest miscarriage of justice in this case, thus, the two convictions were not against the manifest weight of the evidence. To the extent that Mr. Morgan's first assignment of error focused on his being convicted of two counts of gross sexual imposition for acts that occurred during one episode with one victim, it is overruled.
 EVIDENCE OF SEXUAL CONTACT {¶ 16} Mr. Morgan has argued that his convictions are not supported by sufficient evidence or the manifest weight of the evidence because "the victim did not testify or present the opinion that the grabbing of her crotch was in a sexual way or sexual in nature." The "[s]exual contact" required for a gross sexual imposition conviction is defined as, "any touching of an erogenous zone of another . . . for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). The statute does not define "sexually arousing or gratifying." This Court has held that the trier of fact must infer from the evidence whether the defendant's purpose in *Page 7 
touching the victim was to achieve sexual arousal or gratification for either person. State v. Cobb, 81 Ohio App. 3d 179, 185 (1991). "In making its decision, the trier of fact may consider the type, nature and circumstances of the contact, along with the personality of the defendant." Id.
 {¶ 17} In this case, Mrs. Vormelker testified that, while grabbing her, Mr. Morgan said, "[c]ome on, come on, no one needs to know." Viewing the evidence in the light most favorable to the prosecution, this evidence was sufficient for a jury to find that Mr. Morgan grabbed her for the purpose of sexual arousal and/or gratification. Taken together with her testimony that Mr. Morgan appeared to be drunk and the general circumstances of the incident, the convictions were also supported by the manifest weight of the evidence. To the extent that Mr. Morgan's first assignment of error focused on whether his actions met the definition of "[s]exual contact" under Section 2907.01(B), it is overruled.
 CONSISTENCY OF VICTIM'S TESTIMONY {¶ 18} The last part of Mr. Morgan's first assignment of error is that "there was not proof beyond a reasonable doubt that the crime occurred." He has argued that Mrs. Vormelker's testimony was riddled with "inconsistencies and inherent conflict" that would prohibit a jury from finding guilt beyond a reasonable doubt. He has pointed, however, to only one topic of "inherent conflict," and that was in regard to Mrs. Vormelker's description of the initial grabbing incident as having occurred from various angles, either from in front of her, beside her, or behind her. It is not entirely clear from a review of the trial transcript where Mrs. Vormelker was standing in relation to Mr. Morgan when the grabbing began. The transcript is full of notations that Mrs. Vormelker was indicating things with hand gestures and physical role play while testifying, none of which is understandable from a review of the transcript on appeal. *Page 8 
 {¶ 19} Mrs. Vormelker testified to events that, if believed, were sufficient to support Mr. Morgan's convictions for gross sexual imposition. She testified that Mr. Morgan grabbed her by the crotch, tearing her sweatpants as she struggled toward the door, then grabbed her arm and fondled her breast. Furthermore, it was reasonable for the jury to believe her testimony, supported as it was by that of her sister-in-law and the police officer. Mrs. Vormelker said that Mr. Morgan's speech was slurred and he appeared to be intoxicated. She also testified that as he grabbed her, he said, "[c]ome on, come on, no one needs to know." Mr. Morgan contested her evidence only through cross-examination. Any discrepancies in her testimony might have affected her credibility, but they do not make the allegations against Mr. Morgan "so unbelievable as to undermine the integrity of the verdict." State v. Willard, 9th Dist. No. 05CA0096-M, 2006-Ohio-5071, at ¶ 25. The convictions were supported by sufficient evidence and were not against the manifest weight of the evidence. Mr. Morgan's first assignment of error is overruled.
 PROSECUTORIAL MISCONDUCT {¶ 20} Mr. Morgan's second assignment of error is that the trial court incorrectly allowed the State to disparage defense counsel and others in front of the jury. Mr. Morgan has questioned the Prosecutor's choice of words during re-direct examination of Mrs. Vormelker when he began a new line of questions with the words, "[s]ince there has been a bit of intrusion into your medical history. . . ." He has also argued that, during closing argument, the Prosecutor "repeatedly disparaged the defense counsel with allegations of `gamesmanship,' accusing [him] of a `false level of ignorance,' and personal attacks on [him] as dancing around the facts." He has further argued that the Prosecutor inappropriately disparaged Mr. Morgan by referring to "whatever defendant was on" and the presence of liquor in Mr. Morgan's home without evidence *Page 9 
to support those statements. He also argued that the Prosecutor inappropriately referred to a witness who was not called to testify as a "town drunk." Mr. Morgan claims these comments interfered with his right to a fair trial. The State has argued that Mr. Morgan failed to object to the statements at trial and, if there is any error in the remarks, it is harmless.
 {¶ 21} "The test for prosecutorial misconduct is whether the prosecutor's remarks were improper, and if so, whether they prejudicially affected the accused's substantial rights." State v.Dovala, 9th Dist. No. 05CA008767, 2007-Ohio-4914, at ¶ 19 (citingState v. Moore, 81 Ohio St. 3d 22, 33 (1998)). "To establish prejudice, Appellant must show a reasonable probability that, but for the prosecutor's improper remarks, the result of the proceeding would have been different." Id.
 {¶ 22} Mr. Morgan did not object at trial to most of the comments he now points to in support of this assignment of error. Therefore, he has forfeited all but plain error in regard to each of those statements.State v. Davis, 116 Ohio St. 3d 404, 2008-Ohio-2, at ¶ 230. The only one of the statements Mr. Morgan objected to at trial was the prosecutor's question of Mrs. Vormelker during redirect examination about whether the man asleep in Mr. Morgan's living room was "known as a `town drunk.'" Regardless of its propriety, the prosecutor's comment about the "town drunk" did not affect the outcome of the trial because the witness the prosecutor referred to was never called to testify. The prosecutor's segue to the topic of Mrs. Vormelker's medical history during her redirect examination was not improper as it reasonably referenced Mr. Morgan's lawyer's cross-examination. His use of the term "intrusion" does not rise to the level of prosecutorial misconduct.
 {¶ 23} "Ohio law grants prosecutors wide latitude, finding that any prosecutorial misconduct [ ] must be considered in the light of the whole case." State v. Wittman, 9th Dist. *Page 10 
No. 23291, 2006-Ohio-6971, at ¶ 6. "It is well settled that the conduct of a prosecutor during trial cannot be made a ground of error unless that conduct deprives the defendant of a fair trial." Id. (citing State v.Papp, 64 Ohio App. 2d 203, 211 (1978)). "Notice of plain error under Crim. R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."State v. Landrum, 53 Ohio St. 3d 107, 111 (1990) (quoting State v.Long, 53 Ohio St. 2d 91, paragraph three of the syllabus (1978)).
 {¶ 24} During closing argument, the prosecutor accused Mr. Morgan's lawyer of claiming "a false level of ignorance . . . on medical issues." While improper, in the context of the entire proceeding, this statement did not deprive Mr. Morgan of a fair trial. There is no basis to conclude that absent that comment, the result of the trial would have been different. The prosecutor's other comments were within the "wide latitude" granted during closing arguments. The prosecutor said there was "liquor lying around, [Mr. Morgan's] intoxicated, whatever he was on." This comment was reasonably based on Mrs. Vormelker's testimony that there were beer cans all over the room and Mr. Morgan seemed to be drunk. The police officer also testified that Mr. Morgan appeared to be drunk hours later when the officer interviewed him. These comments did not deprive Mr. Morgan of a fair trial. His second assignment of error is overruled.
 {¶ 25} Mr. Morgan's third assignment of error is that the trial court incorrectly allowed the prosecutor to vouch for the credibility of witnesses and for information not in the record. Mr. Morgan has argued that, during closing argument, the prosecutor inappropriately "offered his personal testimony" regarding facts outside the record. According to Mr. Morgan, this included comments regarding the dimensions of the room where the crime occurred, identification of the couch, identification of the witness as the "town drunk," details of a rape kit procedure, and an *Page 11 
assertion that "they do not look for clothing frays in a rape kit." The State has argued that none of these comments were preserved by objection in the trial court.
 {¶ 26} "[I]n the tension and turmoil of a trial, both the prosecution and the defense have wide latitude in summation as to what the evidence has shown and what reasonable inferences may be drawn therefrom."State v. Lott, 51 Ohio St. 3d 160, 165 (quoting State v. Stephens,24 Ohio St. 2d 76, 82 (1970)). Although a case could be reversed if a lawyer expressed a personal opinion of the defendant's guilt resting on "`inferences based on facts outside the evidence,' . . . where the reference to matters outside the record is short, oblique, and justified as a reply to defense arguments and elicits no contemporaneous objection, there is no prejudicial error." Id. at 166 (quotingStephens, 24 Ohio St. 2d at 83).
 {¶ 27} The only one of these comments that drew an objection at trial was the prosecutor's statement that, "they don't look for a fray" in reference to the rape kit procedure. Any error in the comments about the rape kit procedure was cured by the trial court when it sustained Mr. Morgan's objection and gave a curative instruction for the jury to disregard statements about what evidence a rape kit "could or could not find."
 {¶ 28} None of the comments Mr. Morgan has challenged rise to the level of plain error. The prosecutor's references to the dimensions of the room and the brand of couch were not offered as facts, but rather sarcastic responses to the defense lawyer's argument that those details should have been important to the investigating officer. The prosecutor's comment about the "town drunk" referred to a man who was not called as a witness at trial. Regardless of its propriety, the comment did not affect the outcome of the trial. Mr. Morgan's third assignment of error is overruled. *Page 12 
 OPINION TESTIMONY {¶ 29} Mr. Morgan's fourth assignment of error is that the trial court incorrectly admitted testimony of lay witnesses tending to show that Mr. Morgan was drunk on the night of the incident. Mr. Morgan has argued that this was impermissible expert testimony from non-expert witnesses. Mr. Morgan failed to object to this testimony during trial, so this Court's review is confined to plain error. State v. Davis,116 Ohio St. 3d 404, 2008-Ohio-2, at ¶ 230.
 {¶ 30} A lay witness may offer opinions and inferences provided they are both rationally based on his perception and helpful to the jury's understanding of the testimony or determination of a fact in issue. Evid. R. 701. "It is generally accepted that virtually any lay witness, including a police officer, may testify as to whether an individual appears intoxicated." State v. Schmitt, 101 Ohio St. 3d 79,2004-Ohio-37, at ¶ 12.
 {¶ 31} Mrs. Vormelker and the police officer testified that Mr. Morgan appeared to be drunk on the night of the incident. They both testified to specific observations that led them to that belief, such as, beer cans strewn around the room, slurred speech, and bloodshot, watery eyes. Both witnesses testified that they had some experience observing drunk people on prior occasions. The prosecutor laid a proper foundation for eliciting these lay witness opinions, and the trial court correctly admitted the testimony. Mr. Morgan's fourth assignment of error is overruled.
 HEARSAY {¶ 32} Mr. Morgan's fifth assignment of error is that the trial court incorrectly admitted testimony from a police officer regarding what Mrs. Vormelker told him about the incident. The State has argued that the testimony was not offered to prove the truth of the matter asserted and *Page 13 
was cumulative in any event because it was admitted after Mrs. Vormelker had testified. Therefore, the State has argued that, if it was error at all, it was harmless.
 {¶ 33} The prosecutor asked the officer to "tell us what she told you when you got to the residence, what had happened to her?" Mr. Morgan's lawyer objected on the basis of hearsay, but the objection was overruled and the statements were admitted as excited utterances. A hearsay statement may be admissible as an excited utterance provided that it relates to a startling event or condition and was "made while the declarant was under the stress of excitement caused by the event or condition." Evid. R. 803(2).
 {¶ 34} Mr. Morgan has argued that "considerable time" had passed between the incident and the report to police so that the statements could not qualify under this exception to the hearsay rule. As Mr. Morgan points out, however, the Ohio Supreme Court has held that "[t]here is no per se amount of time after which a statement can no longer be considered . . . an excited utterance . . . [provided the statement was] made while the declarant [was] still under the stress of the event and . . . [it was] not [ ] a result of reflective thought."State v. Taylor, 66 Ohio St. 3d 295, 303 (1993).
 {¶ 35} In this case, it is not clear how much time had passed between the event and the statement to police, but, according to the testimony, it was not more than 60 to 90 minutes. The officer testified that, when he arrived at her house on the night of the incident, Mrs. Vormelker's "[f]ace was swollen up, just very red, pink" and she "was gagging, choking for lack of breath, weeping strongly." Based on this testimony, the trial court correctly determined that the evidence supported an excited utterance exception to the hearsay rule. Mr. Morgan's fifth assignment of error is overruled. *Page 14 
 INEFFECTIVE ASSISTANCE OF COUNSEL {¶ 36} Mr. Morgan's sixth assignment of error is that he was denied effective assistance of counsel because his lawyer: (1) did not attempt to exclude any evidence and presented no witnesses or physical exhibits at trial; (2) failed to challenge lay witnesses' expert opinions regarding Mr. Morgan's intoxication; and (3) failed to call an expert witness to comment on the lack of physical evidence, Mrs. Vormelker's medical and psychological conditions and treatment, the force required to tear sweatpants, and the lack of proper police procedure during the investigation of this incident; and (4) failed to move for dismissal of the case based on violation of Mr. Morgan's right to a speedy trial.
 {¶ 37} In order to establish ineffective assistance of counsel, a defendant must demonstrate that his lawyer's performance was deficient and that he was prejudiced by that deficiency. Strickland v.Washington, 466 U.S. 668, 687 (1984). "To warrant reversal, `[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" State v. Bradley, 42 Ohio St. 3d 136, 142 (1989) (quoting Strickland, 466 U.S. at 694).
 CHALLENGING EVIDENCE {¶ 38} Trial strategy "must be accorded deference and cannot be examined through the distorting effect of hindsight." State v.Conway, 109 Ohio St. 3d 412, 2006-Ohio-2815, at ¶ 115. In order to prove deficient performance for failure to move for suppression of evidence, "[the defendant] must establish that a basis existed to suppress [the evidence]." State v. Adams, 103 Ohio St. 3d 508, 2004-Ohio-5845, at ¶ 35 (citing State v. Tibbetts, 92 Ohio St. 3d 146, 165-66 (2001)). Even if the defendant proves his lawyer's actions were "professionally unreasonable, *Page 15 
[that will] not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."Strickland, 466 U .S. at 691.
 {¶ 39} Mr. Morgan has not supported his argument that he was denied effective assistance of counsel because his lawyer "did not offer any effort to preclude evidence at trial either through motions to suppress, motions in limine, or objections. . . ." He has not provided this Court with any argument regarding what evidence his lawyer should have moved to suppress or objected to at trial. He has merely argued that a defense lawyer "must be required to at least attempt to exclude the evidence and testimony." Without showing that there was a basis for exclusion of specific evidence, Mr. Morgan cannot show his lawyer's performance was deficient or that such deficiency affected the outcome of his trial. Furthermore, Mr. Morgan cannot prove his lawyer was deficient for failing to challenge the police officer's testimony regarding Mr. Morgan's apparent intoxication because it was proper lay witness opinion testimony under Rule 701 of the Ohio Rules of Evidence. Therefore, to the extent that Mr. Morgan's sixth assignment of error focused on his first and second complaints of ineffective assistance of counsel, it is overruled.
 EXPERT TESTIMONY {¶ 40} Mr. Morgan also alleged that he was denied effective assistance because his lawyer failed to call an expert witness to comment on the lack of physical evidence, Mrs. Vormelker's medical and psychological conditions and treatment, the force required to tear sweatpants, and the lack of proper police procedure during the investigation of this incident. "A decision by trial counsel not to call an expert witness generally will not sustain a claim of ineffective assistance of counsel." State v. Conway, 109 Ohio St. 3d 412, 2006-Ohio-2815, at ¶ 118 (citing State v. Coleman, 45 Ohio St. 3d 298, 307-08 (1989)). *Page 16 
 {¶ 41} Mr. Morgan has not explained what an expert on police procedures might have said or how such testimony might have changed the outcome of his case. He has also failed to explain what an expert on Mrs. Vormelker's medical and psychological conditions could have said and how it could have affected the outcome of his case. Mr. Morgan seems to have suggested that an expert could have testified that the force required to tear the sweatpants would have inevitably caused physical trauma to the victim. This does not appear to be inevitable, however, based on Mrs. Vormelker's testimony that the sweatpants tore because she was pulling away from Mr. Morgan rather than from the force of his attack. In any event, Mr. Morgan's lawyer made that argument to the jury without the assistance of expert testimony. His lawyer's decision not to call such a witness does not support an ineffective assistance claim. Mrs. Vormelker did not claim that she was scratched or bruised in any way and, in fact, testified that the insertion of Mr. Morgan's fingers was slight. Furthermore, Mr. Morgan's lawyer cross-examined Mrs. Vormelker about the lack of medical evidence of trauma. Even if an expert of any kind could have added to the jury's understanding of the facts, Mr. Morgan has not shown that, but for his lawyer's failure to call such an expert to testify, there was a reasonable probability that he would have been acquitted. To the extent that Mr. Morgan's sixth assignment of error focused on his third complaint of ineffective assistance of counsel, it is overruled.
 SPEEDY TRIAL {¶ 42} Mr. Morgan's final argument is that "[f]ailure to file a motion to dismiss for speedy trial, after the presumption period passes, should be found ineffective assistance of counsel." The test for ineffective assistance requires the defendant to show prejudice. Strickland v.Washington, 466 U.S. 668, 687 (1984). Therefore, in order to support an ineffective assistance *Page 17 
claim on this basis, the defendant must show there was a valid basis for moving to dismiss based on a speedy trial violation and that such a motion would have affected the outcome.
 {¶ 43} Mr. Morgan has conceded that, if the trial court's two sua sponte continuances effectively tolled the clock, then his speedy trial right was not violated. Under Section 2945.72(H) of the Ohio Revised Code, a court may toll the speedy trial time by granting a continuance on its own motion. This Court has held that, "[w]hen the record affirmatively demonstrates the necessity for a continuance and the reasonableness thereof, such continuance extends the Section 2945.71
time limit and does not deny the accused the right to a speedy trial."State v. Thorn, 9th Dist. No. 98CA0020, 1998 WL 892975 at *2 (Dec. 23, 1998).
 {¶ 44} Based on the record before this Court, it is not possible to conclude that Mr. Morgan's right to a speedy trial was violated. Therefore, Mr. Morgan has not shown that he was prejudiced by his trial lawyer's failure to move to dismiss the charges based on a violation of Mr. Morgan's speedy trial right. Mr. Morgan's sixth assignment of error is overruled.
 CONCLUSION {¶ 45} Mr. Morgan's assignments of error are overruled. The judgment of the Medina County Common Pleas Court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27. *Page 18 
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to appellant.
CLAIR E. DICKINSON FOR THE COURT
 MOORE, P. J. SLABY, J. CONCUR *Page 1