[Cite as *State v. Rusu*, 2024-Ohio-1155.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS | |
| | )ss: | NINTH JUDICIAL DISTRICT | |
| COUNTY OF SUMMIT | ) | | |

STATE OF OHIO/CITY OF AKRON

    Appellee

v.

MICHAEL H. RUSU

    Appellant

C.A. Nos.     30756
                30984

APPEAL FROM JUDGMENT
ENTERED IN THE
AKRON MUNICIPAL COURT
COUNTY OF SUMMIT, OHIO
CASE No.     22 CRB 07188

DECISION AND JOURNAL ENTRY

Dated: March 27, 2024

STEVENSON, Presiding Judge.

{¶1} Defendant-Appellant, Michael Rusu, appeals from the judgment of the Akron Municipal Court, alleging that the evidence against him was insufficient to support his convictions and that his trial counsel was ineffective for failing to request a mistaken belief jury instruction. For the reasons set forth below, this Court affirms.

I.

{¶2} Mr. Rusu was charged with one count of theft in violation of Akron City Code ("A.C.C.") 131.15, and two counts of criminal damaging in violation of A.C.C. 131.06. The theft count and one of the counts of criminal damaging pertain to events that took place on October 3, 2022, in Akron Municipal Court Case Number 22 CRB 07185. The remaining count of criminal damaging pertains to events that occurred on January 27, 2023, in Akron Municipal Court Case Number 23 CRB 00693.

{¶3}    Mr. Rusu pleaded not guilty to all the charges. The matter proceeded to a jury trial. At the close of the City's case, Mr. Rusu moved for an acquittal under Crim.R. 29(A) which the trial court denied.  Mr. Rusu did not present a defense and rested his case.  Mr. Rusu renewed his motion for acquittal, which the trial court again denied.  The jury found him guilty on all three counts.  After a pre-sentence investigation, the trial court sentenced Mr. Rusu to a total of 180 days in jail with 90 days suspended, ordered him to obey all laws for two years, and placed him on probation for one year.

{¶4}    Mr. Rusu timely appealed in Case Number 22 CRB 07185.  He moved to file a delayed appeal in Case Number 23 CRB 00693 and to consolidate the two cases for purposes of appeal.  This Court granted both motions.  Mr. Rusu asserts three assignments of error for our review.

II

**ASSIGNMENT OF ERROR NUMBER ONE**

**THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT FAILED TO GRANT APPELLANT'S CRIM.R. 29(A) MOTION FOR JUDGMENT OF ACQUITTAL ON ALL THREE CHARGES.**

**ASSIGNMENT OF ERROR NUMBER TWO**

**THE EVIDENCE PRESENTED TO THE JURY IN THIS CASE WAS NOT SUFFICIENT AND THUS WAS A VIOLATION OF APPELLANT'S RIGHT TO DUE PROCESS AS GUARANTEED UNDER THE OHIO AND FEDERAL CONSTITUTIONS.**

{¶5}    In his first and second assignments of error, Mr. Rusu challenges the sufficiency of the evidence.  In his first assignment of error, he argues that the trial court erred in denying his Crim.R. 29(A) motions for acquittal because the City did not prove the essential elements of the crimes charged beyond a reasonable doubt.  For the same reason, he argues in his second

assignment of error that the jury's verdict was not supported by sufficient evidence. We disagree with Mr. Rusu.

{¶6} Crim.R. 29(A) provides that the trial court "on motion of a defendant * * * shall order the entry of a judgment of acquittal of one or more offenses charged * * * if the evidence is insufficient to sustain a conviction * * *." "A motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37.

{¶7} Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id*. A sufficiency review does not "resolve evidentiary conflicts or assess the credibility of witnesses * * *." *State v. Hall*, 9th Dist. Summit No. 27827, 2017-Ohio-73, ¶ 10. Sufficiency "concerns the [Prosecution's] burden of production and is, in essence, a test of adequacy." *State v. Wilk*, 9th Dist. Medina No. 22CA0008-M, 2023-Ohio-112, ¶ 9.

{¶8} At trial, the City presented the testimony of the two complainants, L.B., and A.F., and two Akron Police Officers. Video footage from L.B.'s security camera was admitted into evidence as the City's exhibit. The testimony and evidence revealed the following.

{¶9} Mr. Rusu lives next door to L.B. L.B. testified that when Mr. Rusu moved in about five years ago, a property line dispute immediately arose between them. As a result of that dispute,

L.B. had her property surveyed. The surveyor placed a survey pin in the ground to mark the property line. A.F., who lives on the other side of Mr. Rusu, was aware of the issues between L.B. and Mr. Rusu, and had assisted L.B. at various times in handling the disputes with Mr. Rusu. A.F. was present when the surveyor put the survey pin in the ground. L.B. also marked her property line with a wooden fence post that she purchased, and later, with a shorter metal stake that A.F. purchased. The fence post and metal stake are located near the sidewalk.

{¶10} A.F. and L.B. both testified that the metal stake and fence post were placed on L.B.'s property approximately six to eight inches from the survey pin to give Mr. Rusu extra room to get his car in and out of the driveway. A.F. also installed a wooden fence along the side of L.B.'s house next to Mr. Rusu's house that was even with the fence post. In addition, L.B. placed audio-visual security cameras on the side of her house facing Mr. Rusu's house. The cameras are triggered by any objects that get close to the fence line and send a loud alarm signal to notify L.B. of an encroachment. When asked at trial whether Mr. Rusu had ever said anything to her about the stakes and fence post, L.B. answered that the only thing Mr. Rusu has ever said to her is "[g]et that garbage off my property."

{¶11} On October 3, 2022, A.F. was sitting on his porch and observed Mr. Rusu come out of his house and walk over to the area of L.B.'s fence post and metal stake. After taking some pictures, Mr. Rusu pulled the fence post out of the ground and threw it onto his front yard. He then kicked the stake a couple times, pulled it out of the ground, and threw it down a few feet away. Mr. Rusu proceeded to pick up a rock that was lying on L.B.'s property close to where the stake and fence post had been and took it over to his tree lawn. He then walked back to the stake, picked it up from the ground, stumbled and nearly fell, then walked with the stake in his hand over to the space between his truck and house. A.F. did not see where Mr. Rusu took the stake, but Mr.

Rusu did not return it and it was never recovered. A.F. never gave Mr. Rusu his consent to take the stake. A.F. testified that he paid between $30 and $42 for the stake. Mr. Rusu did not pay A.F. for the stake.

{¶12} L.B. testified that she observed the same sequence of events on her security camera. She said that when Mr. Rusu walked over to his truck with the stake, she heard a "cling" sound but never saw what he did with the stake thereafter. She assumed it either fell on the ground or was thrown into Mr. Rusu's truck based on the "cling" sound. After Mr. Rusu left, she retrieved the fence post and rock. The fence post was bent in the middle. She looked for the stake but it was "nowhere to be found." She did not give Mr. Rusu permission to dislodge the fence post and stake nor to keep the stake. Mr. Rusu did not return the stake. The police were summoned and Office Kyle Heidecker responded. Office Heidecker spoke with A.F. and L.B. and viewed the security footage. He saw the bent fence post and was told about the missing metal stake. Mr. Rusu was charged with theft of the metal stake and criminal damaging of the fence post.

{¶13} After the events on October 3, 2022, L.B. purchased a green metal pole approximately four feet high and placed it on the property line between hers and Mr. Rusu's property, near the sidewalk. According to L.B. and A.F., on January 27, 2023, they observed Mr. Rusu get into his truck and pull out of the driveway to let his brother out. While doing so, Mr. Rusu drove over the metal pole. He then pulled across the street and parked while he waited for his brother to leave. After his brother pulled out, Mr. Rusu backed into his driveway and ran over the metal pole a second time. He then pulled forward, drove over the top of the metal pole again, backed over it once more, and parked his truck in the driveway. The police were again summoned.

{¶14} When Officer Dylan Thompson arrived, he reviewed the video footage, took A.F. and L.B.'s statements, and saw that the metal pole was bent at a "90 degree angle" and was

"damaged beyond its useable state." A.F. testified that it was "[b]ent all up" and "curly" and had to be removed so as not to pose a hazard. Mr. Rusu told Officer Thompson that the metal pole was on his property. However, Officer Thompson testified that he observed that the metal pole was on L.B.'s side of the survey pin. Mr. Rusu was charged with criminal damaging of L.B.'s metal pole. The metal pole was later replaced by two metal stakes that were secured by cement blocks.

{¶15}  Mr. Rusu was convicted of theft of A.F.'s stake under A.C.C. 131.15, and criminal damaging of L.B.'s fence post and metal pole under A.C.C. 131.06. A.C.C. 131.15 prohibits theft and provides that:

> A. No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either:
>
> 1. Without the consent of the owner or person authorized to give consent;
>
> 2. Beyond the scope of the express or implied consent of the owner or person authorized to give consent;
>
> 3. By deception;
>
> 4. By threat.

{¶16}  The mens rea element of theft requires two mental states:  a "purpose to deprive the owner of property" and that the defendant must "knowingly obtain or exert control over" the property. Under A.C.C. 130.08(A), "[a] person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."  "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that the circumstances probably exist." A.C.C. 130.08(B).

{¶17} "Deprive" is defined in A.C.C. 131.01 as:

1. To withhold property of another permanently, or for such period as to appropriate a substantial portion of its value or use, or with purpose to restore it only upon payment of a reward or other consideration;

2. To dispose of property so as to make it unlikely that the owner will recover it; or

3. To accept, use, or appropriate money, property, or services, with purpose not to give proper consideration in return for the money, property, or services, and without reasonable justification or excuse for not giving proper consideration.

{¶18} Mr. Rusu argues that there was no evidence that he acted with a "purpose to deprive" and did not "knowingly exert control over" A.F.'s metal stake when he pulled it out of the ground and took it somewhere. He argues that because there was a property line dispute, his purpose was to "[g]et that garbage off my property" rather than to take it. We disagree with Mr. Rusu.

{¶19} The City's evidence showed that A.F. purchased the stake. Mr. Rusu does not dispute that A.F. is the "owner of [the] property" under A.C.C. 131.15(A). When Mr. Rusu walked over to the stake, physically pulled it up from the ground, then picked it back up and walked away with it, he was aware of his actions. There was no evidence that he acted involuntarily. Therefore, Mr. Rusu "knowingly * * * exert[ed] control over [the stake]." A.C.C. 131.15(A); A.C.C. 130.08(B).

{¶20} There was also no evidence that A.F. gave Mr. Rusu permission to take the stake and not return it, even if it had been on Mr. Rusu's property. When Mr. Rusu failed to return the stake without consent to do so, he demonstrated an intent to "cause a certain result," i.e., to "[t]o dispose of property so as to make it unlikely that the owner will recover it," and thus, acted with "purpose to deprive" A.F. of the stake, thereby committing the crime of theft. A.C.C. 131.15(A)(1). Furthermore, there was no evidence that Mr. Rusu paid or offered to pay A.F. for the missing stake. Therefore, Mr. Rusu acted "with purpose not to give proper consideration in return for the * * *

property," additional evidence that Mr. Rusu "deprive[d]" A.F. of the stake. A.C.C. 131.01. If Mr. Rusu was sincere in his desire to merely remove his neighbor's stake that was on his land, he would have returned it to L.B. Simply stated, Mr. Rusu took something that did not belong to him and did not return it.

{¶21} Accordingly, the evidence, when viewed in the light most favorable to the City, would convince the average mind that Mr. Rusu was guilty of theft of A.F.'s stake beyond a reasonable doubt in violation of A.C.C. 131.15.

{¶22} Mr. Rusu was also convicted of two counts of criminal damaging, one count regarding L.B.'s fence post from the incident on October 3, 2022, and the other count regarding L.B.'s metal pole from the incident on January 27, 2023. A.C.C. 131.06, which forbids criminal damaging, provides that:

> A. No person shall cause, or create a substantial risk of physical harm to any property of another without his consent:
>
> 1. Knowingly, by any means;
>
> * * *

{¶23} To reiterate, "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." A.C.C. 130.08(B). "Physical harm to property" means "[a]ny tangible or intangible damage to property which, in any degree, results in loss to its value or interferes with its use or enjoyment." A.C.C. 130.02.

{¶24} Regarding the fence post, Mr. Rusu makes the same argument here that he did with respect to A.F.'s stake. He argues that he did not knowingly cause damage to the fence post, but instead, merely intended to remove it from his property. For the same reasons outlined above, we

reject that argument. If Mr. Rusu had truly wanted to remove the fence post from his property, he would not have thrown it onto his own front yard, but instead, would have returned it to L.B. Even if the fence post was on his property without his consent, that would not have given Mr. Rusu the right to harm it.

{¶25} The City's evidence showed, and Mr. Rusu does not argue otherwise, that the fence post and metal pole belonged to L.B. and are therefore the "property of another." A.C.C. 131.06(A). The fence post was bent in the middle as a result of Mr. Rusu throwing it onto his property, and the metal pole was "bent all up" and "curly" "beyond its useable state." Therefore, both of those items were altered from their original condition, and thus, incurred "physical harm to property;" that is, "tangible * * * damage * * * which, in any degree, results in loss to its value or interferes with its use or enjoyment." A.C.C. 130.02. L.B. did not consent to Mr. Rusu harming those items. The fact that Mr. Rusu drove over the metal pole multiple times as he was pulling in and out of his driveway raises the reasonable inference that he did not do so by accident as he claims. Thus, when Mr. Rusu threw the fence post into his front yard and ran over the metal pole three times with his vehicle, resulting in damage, he had knowledge that his actions would "cause a certain result or [would] be of a certain nature[;]" that is, "create a substantial risk of physical harm to any property of [L.B.] without [her] consent[,]" and therefore, committed the crime of criminal damaging. A.C.C. 130.08(B); A.C.C. 131.06.

{¶26} Mr. Rusu claims that the City's evidence is insufficient that he created a risk of physical harm to L.B.'s metal pole because L.B.'s son put it in the ground knowing that Mr. Rusu would likely drive over it. He also claims that L.B. then set up surveillance cameras so that she could record him driving over the stake that her son planted. There is no testimony in the record establishing these claims; rather, Mr. Rusu invites us to infer these facts from his arguments.

However, our duty in an appeal of the sufficiency of the evidence is to view the evidence in the light most favorable to the prosecution, not the defendant. Further, Mr. Rusu does not point this Court to any location in the transcript or record that demonstrates these alleged facts. Under App.R. 12(A), this Court may disregard any alleged errors where the party raising it has failed to identify in the record the error on which the assignment of error is based. Accordingly, we will disregard this argument.

{¶27} Based on the foregoing, when viewed in the light most favorable to the City, the evidence would convince the average mind that Mr. Rusu was guilty of criminal damaging of L.B.'s metal pole and fence post beyond a reasonable doubt in violation of A.C.C. 131.06.

{¶28} Mr. Rusu's first and second assignments are without merit and overruled.

### ASSIGNMENT OF ERROR NUMBER THREE

**APPELLANT'S COUNSEL WAS INEFFECTIVE BY FAILING TO ASK THE TRIAL COURT TO INSTRUCT THE JURY REGARDING THE CONCEPT OF MISTAKEN BELIEF, ALL IN VIOLATION OF APPELLANT'S RIGHTS AS GUARANTEED UNDER THE OHIO AND FEDERAL CONSTITUTIONS.**

{¶29} Mr. Rusu argues that his trial counsel was ineffective for not requesting a mistaken belief jury instruction. He argues that had the jury instruction been requested and accepted by the jury, it would have negated the "knowingly" element of all three charges. He maintains that the City presented no evidence that he acted for any reason other than from a mistaken belief that the items he was accused of stealing and damaging were on what he believed to be his property.

{¶30} The Court employs a two-step analysis when an allegation of ineffective assistance of counsel is made. To warrant reversal based on ineffective assistance of counsel, the defendant must show that his counsel was "deficient and that he was prejudiced by that deficiency." *State v. Morgan*, 9th Dist. Medina No. 07CA0124-M, 2008-Ohio-5530, ¶ 37. When assessing trial

counsel's performance, this Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington,* 466 U.S. 668, 689 (1984). "'[T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Bradley*, 42 Ohio St.3d 136, 142 (1989), quoting *Strickland* at 694.

{¶31} "Ignorance or mistake of fact is a defense if it negates a mental state required to establish an element of a crime, except that if the defendant would be guilty of a crime under the facts as he believed them, then he may be convicted of that offense." *State v. Pecora*, 87 Ohio App.3d 687, 690 (9th Dist.1993). Jury instructions "must be based on the actual issues in the case as presented by the evidence." *Id.* citing *State v. Rogers*, 43 Ohio St.2d 28 (1975). "A court need not give an instruction unless it applies to the facts in the case." *Id.*

{¶32} Mr. Rusu argues that the mistaken belief is in reference to his property line. He maintains that the items damaged or taken were on his property. However, the location of the items is not an element of the crimes charged and is completely irrelevant to whether Mr. Rusu knowingly caused damage to or deprived another person of property. Therefore, even if sincere, his belief that the items were on his property would not negate any of the elements of the offenses under the facts as he believed them. Mr. Rusu could not take or damage the property of another merely because he believed it was located on his property. Thus, Mr. Rusu would be guilty even if the situation were as he believed. *See Pecora* at 690. Since the facts of the case did not support a jury instruction on the mistake of fact defense, Mr. Rusu's trial counsel was not deficient in not requesting that instruction.

**{¶33}** Having determined that trial counsel's performance was not deficient, we need not proceed to an analysis of whether Mr. Rusu was prejudiced by that deficiency because none exists. Mr. Rusu's third assignment of error is overruled.

### III.

**{¶34}** Mr. Rusu's assignments of error are overruled. The judgment of the Akron Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Akron Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

———

SCOT STEVENSON
FOR THE COURT

FLAGG LANZINGER, J.
CONCURS.

HENSAL, J.
CONCURS IN JUDGMENT ONLY.


APPEARANCES:

LAWRENCE J. WHITNEY, Attorney at Law, for Appellant.

DEBORAH S. MATZ, Director of Law, and RAYLYN M. TRICE and BRIAN D. BREMER, Assistant Directors of Law, for Appellee.