[Cite as *State v. Greene*, 2018-Ohio-3032.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 28660 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| BRANDON C. GREENE | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR-2016-07-2472 |

DECISION AND JOURNAL ENTRY

Dated: August 1, 2018

TEODOSIO, Judge.

{¶1} Defendant-Appellant, Brandon Greene, appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms in part and reverses in part.

I.

{¶2} Mr. Greene is the cousin of C.G., the victim in this matter. One Sunday morning, C.G. drove to the house of Mr. Greene's mother (i.e., C.G.'s aunt) to speak with her about a familial matter. The two had engaged in a heated exchange several days earlier when C.G. had accused his other aunt, R.G., of pilfering items from his deceased father's house. On his Sunday morning visit, C.G. intended to address the disagreement and clear the air in light of his father's impending funeral.

{¶3} Mr. Greene's mother was standing in her garage when C.G. arrived, parked his car at the bottom of her driveway, and walked up to her. The two spoke briefly with accounts varying as to whether their exchange was peaceful. At its conclusion, C.G. turned to leave and

began walking back to his car. He stopped partway, however, because Mr. Greene emerged from the house and confronted him. Accounts varied with respect to who was present for their exchange. According to C.G., Mr. Greene was accompanied by his aunt, R.G., and his ex-girlfriend, B.W. Others indicated that B.W. remained in the house during the confrontation.

{¶4} As a result of the confrontation between Mr. Greene and C.G., C.G. sustained a gunshot wound to his abdomen and fell to the ground. C.G. testified at trial that Mr. Greene shot him. Likewise, while receiving treatment at the hospital, he told several different police officers that Mr. Greene had shot him. He admitted, however, that in between the time of his initial identification and his trial testimony to the same effect, he changed his statement and told the prosecutor's office that R.G. had shot him. By that point in time, R.G. had passed away, and other members of their family, including Mr. Greene's mother, were claiming that R.G. had shot C.G. When naming Mr. Greene as the shooter at trial, C.G. indicated that he was hesitant to implicate his cousin, but had decided to be truthful in the end.

{¶5} C.G. did not see what happened to the gun that Mr. Greene used to shoot him, but a nearby neighbor saw what happened after the gunshot rang out. Specifically, the neighbor called 911 and reported that he saw a black male crawling on the ground and a second black male with a gun. He then saw a black female in a long-sleeve gray shirt take the gun from the second black male, run into the backyard, and hide the gun. When the police investigated the wooded area at the back of the property, they found the gun used to shoot C.G. There was testimony that Mr. Greene's ex-girlfriend, B.W., matched the description of the female that the neighbor saw hiding the gun.

{¶6} A grand jury indicted Mr. Greene on two counts of felonious assault and one count of having a weapon under disability. Both felonious assault counts also carried an

attendant firearm specification and a repeat violent offender specification. A jury heard all of Mr. Greene's charges and specifications with the exception of his repeat violent offender specifications. Mr. Greene elected to try those specifications to the bench. Accordingly, after the jury found him guilty on all counts, the court heard evidence on the repeat violent offender specifications. The court then found that Mr. Greene was a repeat violent offender.

{¶7} The court determined that Mr. Greene's felonious assault counts, as well as the specifications linked to those counts, were allied offenses of similar import. Consequently, it merged his felonious assault counts and their attendant specifications for purposes of sentencing. The court then sentenced Mr. Greene to a total of 15 years in prison.

{¶8} Mr. Greene now appeals from his convictions and raises two assignments of error for our review.

II.

**ASSIGNMENT OF ERROR ONE**

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT ALLOWED A WITNESS TO TESTIFY AS AN EXPERT ABOUT "INNER-FAMILY VIOLENT SITUATIONS" AND "FAMILY DYNAMICS" IN VIOLATION OF CRIM.R. 16(K).

{¶9} In his first assignment of error, Mr. Greene argues that the trial court erred when it allowed a detective to testify as an expert in the area of inner-family conflicts and family dynamics. He argues that the State willfully violated Crim.R. 16(K) when it elicited that testimony in the absence of a written report and advance notice to him, so the court ought to have excluded it. Upon review, we reject his argument.

{¶10} Criminal Rule 16(K) provides, in relevant part, that

An expert witness for either side shall prepare a written report summarizing the expert witness's testimony, findings, analysis, conclusions, or opinion, and shall include a summary of the expert's qualifications. The written report and

summary of qualifications shall be subject to disclosure under this rule no later than twenty-one days prior to trial * * *. Failure to disclose the written report to opposing counsel shall preclude the expert's testimony at trial.

By its own terms, the rule only applies to expert witnesses. *See* Crim.R. 16(K). Moreover, prosecutorial violations of the rule "are reversible only when there is a showing that: (1) the prosecution's failure to disclose was a willful violation of the rule; (2) knowledge of the information would have benefited the accused in the preparation of the defense; and (3) the accused suffered some prejudicial effect." *State v. Sadeghi*, 9th Dist. Wayne No. 14AP0051, 2016-Ohio-744, ¶ 16.

{¶11} This Court has recognized that "[a] lay witness may offer opinions and inferences provided they are both rationally based on his perception and helpful to the jury's understanding of the testimony or determination of a fact in issue." *State v. Morgan*, 9th Dist. Medina No. 07CA0124-M, 2008-Ohio-5530, ¶ 30, citing Evid.R. 701. *Accord State v. Klein*, 9th Dist. Summit No. 26573, 2013-Ohio-3514, ¶ 18-19.

> For example, a police officer who has had occasion to observe intoxicated individuals may testify, without being qualified as an expert, that an individual with whom he or she interacted was intoxicated. *See Morgan* at ¶ 30. Likewise, an officer who has knowledge of the methamphetamine production process and sees various items of paraphernalia seized from a suspect's home may testify, without being qualified as an expert, that the home contained a methamphetamine lab. *See State v. Williams*, 9th Dist. Summit No. 25716, 2011-Ohio-6604, ¶ 11. In both instances, the officer's testimony is based on his or her own perception and is "helpful to the jury's understanding of the testimony or determination of a fact in issue." *Morgan* at ¶ 30. *See also Williams* at ¶ 11.

*State v. McCoy*, 9th Dist. Summit No. 28103, 2017-Ohio-4163, ¶ 29.

{¶12} At trial, the State presented the testimony of Detective Bertina King. Detective King testified that she had known C.G. his entire life because his mother was her best friend. When she learned that he had been shot and was asking for her at the hospital, she went to see him. She spoke with him that evening and, though she was off duty, she recorded their

conversation when he said he wanted to make a statement. While speaking with Detective King, C.G. stated that Mr. Greene had shot him. He also stated that both R.G. and B.W. were present at the time of the shooting, but Mr. Greene was the one with the gun.

{¶13} During her direct examination, the prosecutor asked Detective King whether, in light of her education and 25 years of experience as a police officer, she was familiar with "inner-family violent situations." The detective responded that she was very familiar with those types of situations and that officers constantly have to take into consideration how "family dynamics" can affect an investigation. The prosecutor then asked her whether, in those situations, people are always immediately forthcoming with the police. Over objection, Detective King testified that officers expect most people in those situations to either not tell the truth immediately, to be forthcoming only about certain details, or to change their statement over the course of an investigation. She agreed that victims might later change their statements because, as time goes on, they recognize that they and their assailant are "still family."

{¶14} Mr. Greene argues that the court erred by admitting Detective King's testimony regarding "inner-family violent situations" because it amounted to an expert opinion. Because the detective testified as an expert, he argues, he was entitled to advance notice and a written summary of her opinion, pursuant to Crim.R. 16(K). He asserts that he was prejudiced by the admission of her opinion because it bolstered C.G.'s testimony. He notes that, before trial, C.G. gave conflicting accounts of who shot him. He argues that Detective King's improper testimony helped the State explain C.G.'s contradiction.

{¶15} Assuming without deciding that Detective King improperly testified as an expert, Mr. Green has not shown that her testimony prejudiced the result in this matter. *See McCoy*, 2017-Ohio-4163, at ¶ 30. Multiple witnesses testified that C.G. independently told them that Mr.

Greene was the shooter. Those witnesses included Detective King, Officer David Zarembka, Detective Larry Rhodaback, and Detective Anthony Sutton, the lead investigator in this matter. Detective Sutton also spoke with Mr. Greene two separate times after the shooting. The first time, Mr. Greene stated that C.G. had a gun in his waistband and, when he rushed C.G., the gun went off. The second time, however, Mr. Greene admitted that he brought the gun outside with him and, when he tussled with C.G., the gun went off. There was evidence that C.G. and Mr. Greene were the only two black males at the scene of the shooting and that the neighbor who called 911 specifically stated that he saw one of the black males holding the gun while the other was crawling on the ground. The jury also heard testimony that a female who matched the description of Mr. Greene's ex-girlfriend then attempted to conceal the gun while Mr. Greene fled the scene. There was a wealth of evidence in the record from which the jury could have concluded that Mr. Greene was the individual who shot C.G. Thus, even assuming Detective King improperly testified as an expert, Mr. Greene has not shown that her testimony prejudiced the result in this matter. *See id.* Mr. Greene's first assignment of error is overruled.

## ASSIGNMENT OF ERROR TWO

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR IN SENTENCING MR. GREENE TO A MANDATORY PERIOD OF FIVE YEARS OF POST[-]RELEASE CONTROL.

{¶16} In his second assignment of error, Mr. Greene argues that the trial court erred when it sentenced him to five years of mandatory post-release control. He argues, and the State concedes, that he was only subject to three years of mandatory post-release control. Upon review, we agree.

{¶17} "'[T]o fulfill the requirements of the post[-]release-control-sentencing statutes, * * * a trial court must provide statutorily compliant notification to a defendant regarding post[-

]release control at the time of sentencing * * *.'" *State v. Lindsay*, 9th Dist. Lorain No. 17CA011206, 2018-Ohio-2871, ¶ 10, quoting *State v. Qualls*, 131 Ohio St.3d 499, 2012-Ohio-1111, ¶ 18. Specifically, the court must (1) advise the defendant at the sentencing hearing of his post-release control obligation and the consequences for violating it, and (2) incorporate its notification in the sentencing entry. *Qualls* at ¶ 18-19. "When a judge fails to properly impose statutorily mandated post[-]release control as part of a defendant's sentence, the post[-]release[ ]control sanction is void." *State v. Holdcroft*, 137 Ohio St.3d 526, 2013-Ohio-5014, paragraph two of the syllabus.

{¶18} Mr. Greene was convicted of felonious assault, a second-degree felony, and having a weapon under disability, a third-degree felony. The trial court orally notified him that he was subject to five years of mandatory post-release control and incorporated that five-year term in the sentencing entry. By statute, however, Mr. Greene was only subject to three years of mandatory post-release control for his second-degree felony. *See* R.C. 2967.28(B)(2); *State v. Kracker*, 9th Dist. Summit No. 25315, 2010-Ohio-5329, ¶ 6, citing R.C. 2967.28(F)(4)(c). Because the court failed to properly impose post-release control upon him, that portion of his sentence is void, s*ee Holdcroft* at paragraph two of the syllabus, and he "is entitled to a new sentencing hearing limited to the proper imposition of post-release control." *Lindsay* at ¶ 11. As such, Mr. Greene's second assignment of error is sustained.

### III.

{¶19} Mr. Greene's first assignment of error is overruled, and his second assignment of error is sustained. The judgment of the Summit County Court of Common Pleas is affirmed in part, reversed in part, and the cause is remanded to the trial court to conduct a new sentencing hearing limited to the proper imposition of post-release control.

8

                                         Judgment affirmed in part,
                                              reversed in part,
                                         and cause remanded.

                            _____

        There were reasonable grounds for this appeal.

        We order that a special mandate issue out of this Court, directing the Court of Common

Pleas, County of Summit, State of Ohio, to carry this judgment into execution.  A certified copy

of this journal entry shall constitute the mandate, pursuant to App.R. 27.

        Immediately upon the filing hereof, this document shall constitute the journal entry of

judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the

mailing in the docket, pursuant to App.R. 30.

        Costs taxed equally to both parties.


                                 _____
                                 THOMAS A. TEODOSIO
                                 FOR THE COURT


SCHAFER, P. J.
CARR, J.
CONCUR.


APPEARANCES:

NEIL P. AGARWAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant
Prosecuting Attorney, for Appellee.