[Cite as *State v. Pitts*, 2018-Ohio-3216.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | C.A. No. 17CA0060-M |
| --- | --- |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| JASON L. PITTS | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 17CR0016 |

DECISION AND JOURNAL ENTRY

Dated: August 13, 2018

CALLAHAN, Judge.

{¶1}   Jason Pitts appeals from his conviction in the Medina County Common Pleas Court. This Court affirms.

I.

{¶2}   On January 5, 2017, a Medina County jail inmate, J.W., reported to a housing officer that his wife, H.W., was at the Motel 6 in Medina Township waiting for her drug dealer. The housing officer relayed this information to Sergeant Donald Boone who in turn relayed the information to the director of the Medina County Drug Task Force, Gary Hubbard. According to Sergeant Boone, the housing officer described J.W. as "very agitated" because he was concerned that H.W. would overdose.

{¶3}   Director Hubbard requested additional information for the agents that he was deploying to the motel. Sergeant Boone called the housing officer and overheard J.W. stating that the drug dealer was Mr. Pitts and that he would be traveling from Akron along State Route

18 driving a black station wagon or SUV-type vehicle. Sergeant Boone relayed this additional information to Director Hubbard who relayed it to his agents.

{¶4} Drug task force agents set up surveillance around the motel. Agent John Stayrook went to the front desk and inquired as to what room H.W. was in. He learned that she had checked into room 301 about a half hour earlier. He then took up a position across the street from the motel. He observed a black Dodge Magnum pull in the parking lot. He saw the driver exit the vehicle, but leave the vehicle running. The driver was talking on a cell phone as he walked towards the motel. At the same time, Agent Stayrook observed H.W. looking out of her window while talking on a cell phone. He further observed the driver enter the motel building and return to the vehicle within about five minutes.

{¶5} Agent Stayrook followed the vehicle out of the parking lot and conducted a traffic stop. The vehicle had a temporary tag registered to Mr. Pitts, and Mr. Pitts was the driver. Initially, Mr. Pitts denied knowing why he was stopped, but, when Agent Stayrook said it was about the drugs that he sold at the motel, Mr. Pitts responded "yes." Mr. Pitts consented to a search of the vehicle and of his person. A stack of lottery tickets was found in the vehicle, $1,400 was found in one of Mr. Pitts' pockets, and a $50 bill was found in another pocket. Mr. Pitts reported that it was his birthday, he had just come from a casino, and he went to the motel looking for J.W. and H.W. because they watch football together.

{¶6} Meanwhile, Agents Curt McCune, Thomas Carrell, and Tadd Davis knocked on the door to H.W.'s room. H.W. allowed them in, greeted Agent McCune by name, and agreed to speak to them. She indicated that there were no drugs in the room because she had already snorted them. On cross-examination, Agent McCune was asked if "[H.W.] had done approximately five lines of heroin in [ ] five minutes, according to her." He was further asked if

it was surprising that she would have received that amount for $20. He responded affirmatively to both questions. On re-direct, Agent McCune testified that H.W. stated that she had paid with a $50 bill, but that she owed $30, so the amount that she received was generous. Agent McCune further observed that H.W.'s pupils were "very pinpoint[,]" which he testified is common when someone has used heroin or fentanyl. He testified that she was acting pretty normal and that heroin addicts often use their heroin immediately upon purchase to return to "normalcy."

{¶7} Agent Carrell testified that H.W. consented to a search of the room. A folded-up lottery ticket and a rolled-up dollar bill were found in the room. Agent McCune testified that the lottery ticket was folded in a way that is common for packaging heroin and that it is also common for drug users to roll a dollar bill for use as a "snort tube."

{¶8} Mr. Pitts was indicted for trafficking in heroin, a fifth-degree felony, in violation of R.C. 2925.03(A)(1)/(C)(6)(a). A forfeiture specification was added for the $1,450. The matter proceeded to a bench trial. Sergeant Boone, Director Hubbard, Agent McCune, Agent Carrell, and Agent Stayrook testified as summarized above. In addition, H.W. testified at the trial.

{¶9} H.W. testified, for the most part, that she did not remember the day in question because she was high on drugs. She further indicated that listening to a tape recording of her conversation with the agents would not help to refresh her recollection. She did remember, however, that she spoke with her husband on the phone, that they were both crying, and that she told him that she "felt like overdosing and dying." She also remembered speaking with Agent McCune, although she did not remember his name. She testified that she had snorted heroin, but that she obtained it in Akron prior to driving to the motel and specifically denied receiving heroin from Mr. Pitts.

**{¶10}** At the conclusion of the bench trial, the court found Mr. Pitts guilty of trafficking in heroin. The court sentenced him to 180 days in jail and ordered $50 forfeited. Mr. Pitts appeals, raising two assignments of error.

II.

**ASSIGNMENT OF ERROR NO. 1**

THE TRIAL COURT ABUSED ITS DISCRETION BY ADMITTING HEARSAY STATEMENTS THAT DIRECTLY IMPLICATED THE DEFENDANT IN A DRUG TRANSACTION. THE ADMISSION OF THIS IMPROPER TESTIMONY PREJUDICED THE DEFENDANT'S RIGHT TO A FAIR TRIAL.

**{¶11}** In his first assignment of error, Mr. Pitts argues that the trial court erred in admitting the testimony of Sergeant Boone and Director Hubbard regarding J.W.'s statements in the jail.

**{¶12}** The decision to admit or exclude evidence lies in the sound discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173, 180 (1987). "Absent an issue of law, this Court, therefore, reviews the trial court's decision regarding evidentiary matters under an abuse of discretion standard of review." *State v. Aguirre*, 9th Dist. Lorain No. 13CA010418, 2015-Ohio-922, ¶ 6. An abuse of discretion indicates that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶13}** Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). In the present case, the State argued that it was not presenting the statements for the truth of the matter asserted, but rather to explain the actions taken by the officers. "A law-enforcement officer can testify about a declarant's out-of-court statement for the nonhearsay

purpose of explaining the next investigative step." *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, ¶ 186.

> [I]n order for testimony offered to explain police conduct to be admissible as nonhearsay, the conduct to be explained should be relevant, equivocal, and contemporaneous with the statements; the probative value of statements must not be substantially outweighed by the danger of unfair prejudice; and the statements cannot connect the accused with the crime charged.

*State v. Ricks*, 136 Ohio St.3d 356, 2013-Ohio-3712, ¶ 27.

{¶14} In the instant matter, there were two sets of statements allegedly made by J.W. The first statement was that his wife was at the Motel 6 waiting for her drug dealer. The second statement included an allegation that Mr. Pitts was the drug dealer. Mr. Pitts contends that the witnesses could have "simply testified that [they] received a tip * * * that a drug transaction may be taking place at the Motel 6 in Medina [Township], Ohio, that it involved a woman named [H.W.], and that a person would be arriving in a black station wagon or SUV[-]type vehicle." This Court agrees. *Ricks* is clear that "the statements cannot connect the accused with the crime charged." *Id.* Thus, it was error to admit the statements that J.W. alleged that Mr. Pitts was the drug dealer who was going to be meeting his wife.

{¶15} Having determined that an error occurred, this Court must next determine whether that error was prejudicial or harmless. "It is well settled that, '[t]o demonstrate reversible error, an aggrieved party must demonstrate both error and resulting prejudice.'" *State v. Austin*, 9th Dist. Summit No. 28199, 2017-Ohio-7845, ¶ 30, quoting *Princess Kim, L.L.C. v. U.S. Bank, N.A.*, 9th Dist. Summit No. 27401, 2015-Ohio-4472, ¶ 18. *See also* Crim.R. 52(A).

{¶16} In his reply brief, Mr. Pitts urges this Court to apply the harmless error standard that is applicable to a confrontation clause violation. That standard is "'not simply an inquiry into the sufficiency of the remaining evidence. Instead, the question is whether there is a reasonable

possibility that the evidence complained of might have contributed to the conviction.'" *Ricks* at ¶ 46, quoting *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, ¶ 78. Mr. Pitts, however, did not claim that his confrontation rights were violated to the trial court. *See JPMorgan Chase Bank, Natl. Assn. v. Burden*, 9th Dist. Summit No. 27104, 2014-Ohio-2746, ¶ 12 ("Arguments that were not raised at the trial court cannot be raised for the first time on appeal."). Moreover, even on appeal, Mr. Pitts has not developed any argument concerning whether the statements at issue were testimonial. *See State v. Person*, 9th Dist. Summit No. 27600, 2016-Ohio-681, ¶ 21 (explaining the confrontation clause applies only to testimonial hearsay and the distinction between questions concerning an ongoing emergency and questions concerning past criminal events). Consequently, this Court declines to apply the more stringent standard that is applicable to statements admitted in violation of the confrontation clause.

{¶17} Here, H.W. testified that she spoke with her husband on the phone and told him that she "felt like overdosing and dying." She further testified that her husband told the sergeant at the jail to send police to check on her. Although H.W. denied buying any heroin from Mr. Pitts, it is undisputed that he came to the motel while the agents were conducting surveillance.

{¶18} Agent Stayrook testified that he observed Mr. Pitts park his car at the motel and leave it running as he entered the motel. He further observed Mr. Pitts return to his car within about five minutes. He subsequently followed the car and made a traffic stop. He informed Mr. Pitts that he stopped him because of the drugs he sold at the motel, and Mr. Pitts responded "yes." On cross-examination, Agent Stayrook conceded that this response may have been sarcasm and not an admission. Nonetheless, it was undisputed that Mr. Pitts made a very brief stop at the hotel. The duration of the stop, coupled with the fact that he left his car running, is

consistent with a drug deal rather than Mr. Pitts' suggestion that he was looking for J.W. and H.W. to watch football.

{¶19}  In addition, the presence of the lottery tickets in the car and the lottery ticket found in the hotel room was further evidence that Mr. Pitts engaged in a drug transaction with H.W. The lottery tickets in both locations were standard Ohio lottery tickets, not scratch-off tickets. Although H.W. testified that she usually bought heroin packaged in cellophane, she did not recall how the heroin was packaged that day. Agent McCune testified that it was common to use a folded-up lottery ticket to package heroin, and H.W. admitted that she snorted heroin prior to the agents' arrival in her room.

{¶20}  There was sufficient evidence to establish Mr. Pitts' guilt beyond a reasonable doubt without Sergeant Boone's and Director Hubbard's testimony that J.W. stated that Mr. Pitts was the drug dealer who was meeting H.W. at the hotel. Consequently, any error in its admission was harmless.

{¶21}  The first assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 2

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ALLOWING A WITNESS TO TESTIFY ABOUT A PAST STATEMENT SHE MADE WHEN THE WITNESS STATED [THAT] THE RECORDING WOULD NOT REFRESH HER MEMORY, THAT AT THE TIME SHE MADE THE STATEMENTS SHE WAS HIGH ON DRUGS AND OFF HER PSYCH [SIC] MEDICATIONS, AND THAT THE STATEMENT DID NOT ACCURATELY REFLECT HER KNOWLEDGE AT THE TIME IT WAS MADE.

{¶22}  In his second assignment of error, Mr. Pitts argues that the trial court erred in allowing the prosecutor to play and admit into evidence a portion of the tape recording of H.W.'s interaction with the agents at the motel.

**{¶23}** As previously stated, this Court generally reviews a trial court's evidentiary decisions for an abuse of discretion. *See Aguirre*, 2015-Ohio-922, at ¶ 6. Evid.R. 803(5) permits recorded recollections to be read into evidence under certain circumstances. For the statement to come in as substantive evidence, the testimony of the witness must establish that:

> (1) the witness does not have a present recollection of the events in question; (2) the recorded recollection was made at a time when the events were fresh in the witness's memory; (3) the recorded recollection was made or adopted by the witness; and (4) the recorded recollection correctly reflects the prior knowledge of the witness.

*State v. Rutkowski*, 9th Dist. Lorain No. 94CA005831, 1995 Ohio App. LEXIS 2273, *12 (May 31, 1995). The rule prohibits the admission of the recorded statement as an exhibit "unless offered by an adverse party." Evid.R. 803(5).

**{¶24}** In the present case, H.W. was asked if she remembered the incident on January 5, 2017 at the Motel 6. She responded, "No." She elaborated, "I don't really remember that day in question. That was a long time ago. I was using drugs back then." H.W. did not deny that the recording was made on the day at issue, but stated that she did not understand how she could have been recorded without being told it was happening. The court allowed the State to play a portion of the tape, and H.W. reluctantly admitted, "I guess that's my voice." Although the State suggested that the recording would have reflected H.W.'s knowledge at the time, H.W. never admitted that it did. Rather, she testified that she was in a manic state and, when she is in that state, she "say[s] crazy things."

**{¶25}** Over defense counsel's objection, the trial court admitted the portion of the tape that had been played into evidence. Mr. Pitts is correct that Evid.R. 803(5) does not permit the admission of such an exhibit into evidence when it is not offered by the adverse party. He is also

correct that the recording could not come in as substantive evidence when the testimony of the witness did not establish that it correctly reflected her prior recollection.

{¶26} The trial court, however, expressly rejected the State's attempt to introduce H.W.'s statements to the agents as substantive evidence. Nonetheless, the court recognized that the statements could be used in an attempt to impeach the witness. On appeal, Mr. Pitts has not addressed impeachment. This Court will not create an argument on his behalf. *See Cardone v. Cardone*, 9th Dist. Summit Nos. 18349, 18673, 1998 Ohio App. LEXIS 2028, *22 (May 6, 1998). Furthermore, "it can be assumed that a trial judge, deciding the case in the absence of a jury, disregarded improper evidence." *Prakash v. Copley Twp.*, 9th Dist. Summit No. 21057, 2003-Ohio-642, ¶ 36.

{¶27} The second assignment of error is overruled.

III.

{¶28} The assignments of error are overruled. The judgment of the Medina County Common Pleas Court is affirmed

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

LYNNE S. CALLAHAN
FOR THE COURT

CARR, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

DAVID C. SHELDON, Attorney at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and VINCENT V. VIGLUICCI, Assistant Prosecuting Attorney, for Appellee.