[Cite as *State v. Marshall*, 2019-Ohio-1154.]

STATE OF OHIO       )                IN THE COURT OF APPEALS
)ss:            NINTH JUDICIAL DISTRICT
COUNTY OF MEDINA   )

| STATE OF OHIO | C.A. No. 18CA0054-M |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| KYRE MARSHALL | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 17CR0865 |

DECISION AND JOURNAL ENTRY

Dated: March 29, 2019

SCHAFER, Judge.

{¶1} Defendant-Appellant, Kyre Marshall, appeals from her conviction in the Medina County Court of Common Pleas. This Court affirms.

I.

{¶2} One afternoon while they were away from home, there was a break-in at the apartment of H.B. and her boyfriend. Surveillance video from the apartment building captured a male gaining access to their apartment from a window while a female watched his progress. It also captured the female entering the apartment building from the front, remaining inside for less than two minutes, and exiting just behind the male. After the police viewed the video, they recognized the male and arrested him. They then identified Marshall as the female in the video and arrested her as well.

{¶3} A grand jury indicted Marshall on one count of burglary in violation of R.C. 2911.12(A)(2). The matter proceeded to trial with the jury receiving instructions on both

burglary and aiding and abetting. Though the jury found Marshall not guilty of burglary, it found her guilty of aiding and abetting a burglary. The court sentenced her to two years in prison.

{¶4} Marshall now appeals from her conviction and raises four assignments of error for our review.

## II.

### Assignment of Error I

**The State failed to present sufficient evidence to sustain a conviction against Appellant.**

{¶5} In her first assignment of error, Marshall argues that her conviction is based on insufficient evidence. We disagree.

{¶6} A sufficiency challenge of a criminal conviction presents a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "[T]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Although we conduct de novo review when considering a sufficiency of the evidence challenge, "we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570, C-120751, 2013-Ohio-4775, ¶ 33.

{¶7} A person commits burglary if she, "by force, stealth, or deception, * * * [t]respass[es] in an occupied structure * * * that is a permanent or temporary habitation of any person when any person other than [her] is present or likely to be present, with purpose to commit in the habitation any criminal offense." R.C. 2911.12(A)(2). "To support a conviction

for complicity by aiding and abetting * * *, the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that [she] shared the criminal intent of the principal." *State v. Johnson*, 93 Ohio St.3d 240 (2001), syllabus. "The criminal intent of the aider and abettor 'can be inferred from [her] presence, companionship, and conduct * * * before and after the offense is committed.'" *State v. Smith*, 9th Dist. Summit No. 25650, 2012-Ohio-794, ¶ 7, quoting *In re T.K.*, 109 Ohio St.3d 512, 2006-Ohio-3056, ¶ 13. "As with proof of any element of an offense, complicity may be proved by circumstantial evidence, which has the same probative value as direct evidence." *Smith* at ¶ 7.

{¶8} H.B. was at work when her boyfriend called to tell her that someone had broken into their apartment. She testified that she did not know exactly what had been taken from the apartment because all of the items that had been stolen belonged to her boyfriend. H.B. had never met Marshall or Marshall's friend, C.O., but knew that C.O. was at least an acquaintance of her boyfriend. H.B. confirmed that, on the day of the burglary, no one else had permission to enter her apartment. Because her boyfriend was out of town at the time of trial, he did not testify.

{¶9} Officer Josh Wilson responded to the break-in at H.B.'s apartment and spoke with her boyfriend. The boyfriend initially indicated that the only item taken from the apartment was $75 in cash. After Officer Wilson inquired about a lingering odor of marijuana, however, the boyfriend admitted that a black marijuana grinder had also been taken. Officer Wilson testified that he and several other officers viewed the surveillance video from the apartment building and were able to identify two individuals of interest. The individuals, one male and one female, were captured arriving together and walking to the back of the apartment building before the male

removed the window screen to H.B.'s apartment and climbed inside. Because one of the officers believed that the male resembled C.O., Officer Wilson then began looking for him.

{¶10} Officer Wilson located C.O. later that day. He testified that C.O. was wearing the same clothing as the male in the surveillance video, but refused to admit that he had been at the apartment building. The only admission C.O. made to Officer Wilson was that he had been with Marshall earlier in the day. After speaking with C.O., Officer Wilson brought him to the Juvenile Detention Center and went in search of Marshall.

{¶11} Officer Wilson found Marshall later that evening, wearing the same burgundy sweatshirt as the female in the surveillance video. Marshall admitted that she had seen C.O. earlier that day, but denied any involvement in a burglary. She told Officer Wilson that she was already at the apartment building when C.O. arrived. Marshall told the officer that she watched C.O. remove a window screen and climb into one of the apartments. Meanwhile, she walked to the front of the apartment building and entered for the purpose of visiting a different apartment. Marshall gave Officer Wilson the name of the individual whose apartment she had sought out, and the officer confirmed that an individual by that name lived in the apartment directly across the hall from H.B. Marshall claimed that she stayed at the apartment building after C.O. left. When Officer Wilson asked Marshall whether she knew what items C.O. had stolen from the apartment, however, she responded that he had taken a digital scale and a grinder. Moreover, the surveillance video from the apartment depicted Marshall leaving the apartment building directly behind C.O.

{¶12} C.O. testified at trial, but his testimony differed in several material respects from the statement he gave Detective Matthew Fitz during his interview at the police station. C.O. testified that, on the day of the burglary, he was spending time with Marshall when he decided to

go to the apartment of H.B.'s boyfriend to steal his marijuana. He testified that Marshall also knew the boyfriend, but did not know that he lived at that apartment. He claimed that he never told Marshall it was the boyfriend's apartment or that he intended to steal marijuana. He testified that he told Marshall the apartment belonged to his grandfather and that he wanted to go inside to use the bathroom and get a snack. According to C.O., Marshall only watched as he removed the window screen and climbed inside. He denied letting her into the apartment once inside. He testified that, as he exited the apartment, he saw her descending the stairs inside the apartment building, so they walked outside together.

{¶13} While being interviewed at the police station, C.O. told Detective Fitz that it was Marshall's idea to break into the boyfriend's apartment. He told the detective that Marshall knew where the boyfriend lived and knew he had marijuana. Further, he told the detective that, once he entered the apartment through the window, he opened its front door to let Marshall inside. It was C.O.'s testimony at trial that he lied to Detective Fitz about Marshall's involvement because, at the time of his interview, he was scared and under the influence of drugs.

{¶14} The State also introduce at trial the surveillance video from H.B.'s apartment building. The video depicts Marshall and C.O. walking into view together at the back of the apartment building. The two walk and talk while Marshall points several times in the direction of the apartment building. The two then walk down the length of the building before returning to a midway point, whereupon C.O. can be seen removing a window screen. As C.O. climbs inside, Marshall begins to walk away. She then can be seen at the front of the building, entering through the main door. Once Marshall enters the building, she remains inside for less than two

minutes. The video then depicts C.O. walking out of the building with Marshall following behind him.

{¶15} Viewing the evidence in a light most favorable to the State, a rational trier of fact could have found that the State proved, beyond a reasonable doubt, that Marshall aided and abetted a burglary. *See Jenks*, 61 Ohio St.3d 259 at paragraph two of the syllabus. The evidence presented at trial demonstrated that she was present before, during, and after the burglary. *See Smith*, 2012-Ohio-794, at ¶ 7, quoting *In re T.K.*, 109 Ohio St.3d 512, 2006-Ohio-3056, at ¶ 13. Although C.O. later retracted his statements, he told the police that he and Marshall went to H.B.'s apartment because Marshall knew the man who lived there and wanted to steal his marijuana. The surveillance video showed the two walk the length of the apartment building in the back before returning to a center point, wherein Marshall kept watch until C.O. entered through the window. It also later showed Marshall enter the building from the front and exit less than two minutes later directly behind C.O. C.O. told Detective Fitz that he let Marshall into H.B.'s apartment once he gained entry, and Marshall was able to tell the police what C.O. had stolen from the apartment (i.e., a grinder). The State, therefore, set forth evidence from which the jury reasonably could have concluded that Marshall "supported, assisted, encouraged, cooperated with, advised, or incited [C.O.] in the commission of the crime, and that [she] shared [his] criminal intent * * *." *Johnson*, 93 Ohio St.3d 240 at syllabus. Marshall has not shown that her conviction is based on insufficient evidence. Thus, her first assignment of error is overruled.

## Assignment of Error II

**Appellant's convictions are against the manifest weight of the evidence.**

{¶16} In her second assignment of error, Marshall argues that her conviction is against the manifest weight of the evidence. For the following reasons, we reject her assignment of error.

{¶17} When considering an argument that a criminal conviction is against the manifest weight standard, this Court is required to

> review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Courts are cautioned to only reverse a conviction on manifest weight grounds "in exceptional cases," *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340, where the evidence "weighs heavily against the conviction," *Thompkins* at 387.

{¶18} Although Marshall has quoted the manifest weight standard in her brief, she has not included any argument or explanation as to why the evidence in this case weighs heavily against her conviction. *See* App.R. 16(A)(7). Her analysis consists of several sentences wherein she asserts that the jury, had it been properly instructed, would have acquitted her due to a lack of "requisite evidence for a conviction in this case * * *." She has not challenged any of the State's evidence as "unreliable or lacking credibility." *State v. Smith*, 9th Dist. Summit No. 27877, 2016-Ohio-7278, ¶ 16. *See also State v. Vicente-Colon*, 9th Dist. Lorain No. 09CA009705, 2010-Ohio-6242, ¶ 20 ("[S]ufficiency and manifest weight are two separate, legally distinct arguments."). Accordingly, consistent with our precedent, we "will not create or develop a manifest weight argument on [her] behalf." *State v. Jackson*, 9th Dist. Summit No. 28691, 2018-Ohio-1285, ¶ 47. Because Marshall has not presented this Court with any argument

as to why the evidence in this case weighs heavily against her conviction, her second assignment of error is overruled.

## Assignment of Error III

**Appellant was denied a fair trial by the witness' improper comments while testifying.**

{¶19} In her third assignment of error, Marshall argues that the trial court denied her a fair trial when it improperly permitted two witnesses to testify that she and C.O. had not answered certain questions truthfully. For the following reasons, we reject her argument.

{¶20} The decision to admit or exclude evidence lies in the sound discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173, 180 (1987). Thus, this Court generally applies the abuse of discretion standard when reviewing a trial court's decision to admit testimony. *See State v. Pitts*, 9th Dist. Medina No. 17CA0060-M, 2018-Ohio-3216, ¶ 12. If a defendant fails to object to the admission of that testimony, however, she forfeits all but plain error on appeal. *See State v. Banks*, 9th Dist. Medina No. 16CA0084-M, 2017-Ohio-8777, ¶ 34. Plain error exists only where there is a deviation from a legal rule, that is obvious, and that affected the appellant's substantial rights to the extent that it affected the outcome of the trial. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). This Court will not construct a plain error argument on an appellant's behalf. *State v. Hunter*, 9th Dist. Medina No. 17CA0069-M, 2018-Ohio-4249, ¶ 32.

{¶21} Marshall argues that she was denied a fair trial when the trial court permitted Officer Wilson and Detective Fitz to testify in several respects. During their testimony, the officers were asked to compare statements that C.O. and Marshall made with footage taken from the surveillance video at H.B.'s apartment. Marshall argues that it was improper for the court to let the officers testify, based on those comparisons, that portions of her and C.O.'s statements were untrue. She points to six specific instances of allegedly improper testimony. Yet, the

record reflects that she only objected in one instance. Her failure to object in the remaining five instances resulted in a forfeiture of her argument for purposes of appeal. *See Banks* at ¶ 34. While that forfeiture would not extinguish a claim of plain error, Marshall has not argued plain error on appeal, and we will not construct an argument on her behalf. *See Hunter* at ¶ 32. We, therefore, limit our review to the single instance wherein Marshall objected, and the court overruled her objection.

{¶22} During Detective Fitz' testimony, the following exchange took place:

[THE PROSECUTOR]: [I]n your training and experience, especially your experience in interviewing suspects, do you have any valid or logical explanation of why someone who is totally innocent, who did nothing wrong whatsoever, would lie to the police?

[DEFENSE COUNSEL]: Objection, calls for speculation.

THE COURT: Overruled. You can answer, if you know.

[DETECTIVE FITZ]: Can you ask it again? I'm sorry.

[THE PROSECUTOR]: In your training and experience, especially your experience, in interviewing suspects, do you have any logical explanation or reasonable explanation as to why someone who is totally and completely innocent of anything would lie to the police about that incident?

[DETECTIVE FITZ]: No, I have no reason why they would.

Marshall argues that the court erred by admitting the detective's testimony because a witness is not permitted to offer an opinion as to whether another witness is being truthful. She argues that the veracity of her and C.O.'s statements was strictly a matter for the jury to decide and, by offering his opinion on that matter, the detective encroached upon the province of the jury.

{¶23} Upon review, this Court rejects Marshall's argument. Although Marshall objected during Detective Fitz' testimony, she only did so on the basis that the prosecutor's question called for speculation. She did not object on the basis she now asserts, so her argument is not properly before this Court. *See State v. Jamison*, 9th Dist. Summit No. 27664, 2016-Ohio-

5122, ¶ 10 ("[A]n appellant may not raise an argument for the first time on appeal."). Moreover, even assuming that the State's question was improper, Marshall has not demonstrated resulting prejudice. *See State v. Greene*, 9th Dist. Summit No. 28660, 2018-Ohio-3032, ¶ 15. The State produced evidence that Marshall was present before, during, and after the burglary, and encouraged C.O. to steal marijuana from H.B.'s boyfriend. Marshall has not shown that, but for the aforementioned exchange between the prosecutor and Detective Fitz, the jury would not have convicted her. *See id.* Accordingly, her third assignment of error is overruled.

### Assignment of Error IV

**The trial court denied Appellant's right to a fair trial by not giving a requested jury instruction on aiding and abetting which should have included that Defendant's conduct as an accessory after the fact is not criminal under Ohio laws, and cannot constitute criminal conduct.**

{¶24} In her fourth assignment of error, Marshall argues that the trial court abused its discretion when it refused to issue the jury one of her proposed jury instructions. We disagree.

{¶25} "Requested jury instructions should ordinarily be given if they are correct statements of law, if they are applicable to the facts in the case, and if reasonable minds might reach the conclusion sought by the requested instruction." *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, ¶ 240. "This Court reviews a trial court's decision to give or not give jury instructions for an abuse of discretion under the particular facts and circumstances of the case." *State v. Calise*, 9th Dist. Summit No. 26027, 2012-Ohio-4797, ¶ 68. "'A trial court's failure to give a proposed jury instruction is only reversible error if the defendant demonstrates that the trial court abused its discretion, and that the defendant was prejudiced by the court's refusal to give the proposed instruction.'" *State v. Sanders*, 9th Dist. Summit No. 24654, 2009-Ohio-5537, ¶ 45, quoting *Azbell v. Newark Grp., Inc.*, 5th Dist. Fairfield No. 07 CA 00001, 2008-Ohio-2639, ¶ 52.

{¶26} Marshall argues that the trial court erred when it refused to issue the jury an additional instruction on aiding and abetting. The instruction was that, "[u]nder Ohio law, a defendant's conduct as an accessory after the fact is not criminal, and cannot constitute criminal conduct." According to Marshall, the jury reasonably could have concluded that C.O. committed a burglary without her knowledge and that she only learned of it after the fact. She argues that the jury still could have convicted her on that basis, however, because it "never knew the correct standard and the correct law." She argues that an accessory after the fact instruction would have changed the result in this matter because the jurors would have understood that her knowledge and/or conduct, after the fact, could not support a charge of aiding and abetting.

{¶27} The record reflects that Marshall requested more than one additional instruction on aiding and abetting, and the trial court agreed to issue at least one of those instructions. It refused to issue the accessory after the fact instruction because it believed that the other instructions adequately covered the entire concept of aiding and abetting. In rejecting the instruction, the court also noted that it did not want to delve "into almost speculative issues."

{¶28} Upon review, we cannot conclude that the trial court abused its discretion when it refused to issue the jury the accessory after the fact instruction. The court issued detailed instructions on aiding and abetting. Those instructions provided as follows:

> The Defendant's charged with aiding and abetting another in the offense of burglary. Before you can find this Defendant guilty of aiding and abetting another in the offense of burglary, you must find beyond a reasonable doubt that on or about the 26th day of September, 2017, and in Medina County, Ohio, the Defendant aided and/or abetted another, [C.O.], in committing the offense of burglary.

> Before you can find the Defendant guilty of complicity by aiding and abetting, you must find beyond a reasonable doubt that this Defendant supported, encouraged, assisted, cooperated with, advised, or incited the principal offender, [C.O.], in the commission of the offense and that the Defendant shared his criminal intent -- shared the criminal intent of the principal offender.

Such intent may be inferred from the circumstances surrounding the offense, but [is] not limited to the presence, companionship, [or] conduct before and after the offense was committed. The mere presence of the Defendant at the scene of the offense is not sufficient to prove in and of itself that the Defendant was an aider and abettor. Witnessing the crime or mere approval of the offense, even if the Defendant had guilty knowledge of the offense, does not by itself make the Defendant an aider or aider and abettor.

Thus, the court specifically advised the jury that a guilty verdict for aiding and abetting would require more than Marshall's mere presence, mere witnessing, or mere approval of C.O.'s crime. *See State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, ¶ 138-144. The court instructed the jury that a guilty verdict had to be based on Marshall's having "supported, encouraged, assisted, cooperated with, advised, or incited" C.O.'s conduct while sharing his criminal intent. *See Johnson*, 93 Ohio St.3d 240 at syllabus. Accordingly, the record does not support Marshall's argument that the jury "never knew the correct standard and the correct law."

{¶29} The record reflects that the trial court "properly charged the jury upon Ohio law relative to aider and abettor, and was under no obligation to give the requested charge." *State v. Carver*, 30 Ohio St.2d 280, 290 (1972). Upon review, we must conclude that the court did not act unreasonably, unconscionably, or arbitrarily in refusing to issue the jury the accessory after the fact instruction. *See Calise*, 2012-Ohio-4797, at ¶ 68. Thus, Marshall's fourth assignment of error is overruled.

## III.

{¶30} Marshall's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

TEODOSIO, P. J.
HENSAL, J.
CONCUR.


APPEARANCES:

THOMAS REIN, Attorney at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and VINCENT V. VIGLUICCI, Assistant Prosecuting Attorney, for Appellee.