[Cite as *State v. Green*, 2019-Ohio-4967.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 29120 |
| | |
| Appellee | |
| | |
| v. | APPEAL FROM JUDGMENT |
| | ENTERED IN THE |
| ENRIQUE D. GREEN | COURT OF COMMON PLEAS |
| | COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 2018-02-0495 |

DECISION AND JOURNAL ENTRY

Dated: December 4, 2019

CARR, Judge.

{¶1}    Appellant, Enrique Green, appeals the judgment of the Summit County Court of Common Pleas.  This Court affirms in part and reverses in part.

I.

{¶2}    This matter arises out of an altercation that occurred between Green and Donovan Jackson during the early morning hours of February 2, 2018, in Akron, Ohio.  Jackson was shot during the course of the altercation, though his wounds were nonlethal and he fled the scene in his SUV.

{¶3}    On February 27, 2018, Green was charged with two counts of felonious assault, with each count containing a firearm specification.  Green pleaded not guilty to the charges at arraignment.  After Green waived his right to a jury trial, the matter proceeded to a bench trial where Green was found guilty of the charges in the indictment.  The trial court determined that the two counts of felonious assault were allied offenses of similar import.  The State elected for Green

to be sentenced on count one of the indictment, a violation of R.C. 2903.11(A)(1), along with the attendant firearm specification. The trial court imposed a two-year prison term for the count of felonious assault and a three-year prison term for the firearm specification. The trial court ordered that the prison terms were to be served consecutively for a total sentence of five years.

{¶4} On appeal, Green raises six assignments of error. This Court has rearranged the assignments of error to facilitate review.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED IN NOT GRANTING DEFENDANT'S MOTION FOR ACQUITTAL UNDER CRIM.R. 29 AS THERE WAS INSUFFICIENT EVIDENCE PRESENTED TO CONVICT HIM OF FELONIOUS ASSAULT.

{¶5} In his first assignment of error, Green contends that the trial court erred in denying his motion for acquittal on the felonious assault charge. Specifically, Green contends that the State failed to demonstrate that he knowingly discharged his gun. This Court disagrees.

{¶6} Crim.R. 29(A) provides:

The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.

{¶7} When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational

trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id.* at paragraph two of the syllabus.

{¶8} Green was convicted of felonious assault in violation of R.C. 2903.11(A)(1), which states, "[n]o person shall knowingly * * * [c]ause serious physical harm to another or to another's unborn." "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact." R.C. 2901.22(B).

## Background

{¶9} At trial, the State presented evidence during its case in chief that supported the following narrative. During the early morning hours of February 2, 2018, Green traveled to the house of his girlfriend, C.J., in Akron, Ohio. C.J.'s two young children were staying with her that night.

{¶10} Jackson, the father of the children, was scheduled to pick up the children at 6:00 AM. After patronizing a local bar and stopping for food at EuroGyro at approximately 3:00 AM, Jackson decided that he would attempt to pick up his children early and he drove to C.J.'s house. Though he attempted to call C.J. to let her know that he was coming, she did not answer her phone. Jackson testified that it was not unusual for him to arrive early, and sometimes he would sleep there until C.J. was ready to leave for work.

{¶11} Jackson parked his Ford Escape in the driveway and walked to the back of the house. Jackson explained that there was a better chance that he could awake C.J. if he forcefully knocked on the back door. When he received no response, Jackson returned to his SUV and backed out of the driveway into the street. At that time, he noticed Green walking toward his vehicle. While Jackson acknowledged that he may have seen Green on a prior occasion, he did not know Green personally. Green approached the driver's side window and asked Jackson what he was doing. Though Jackson took exception to the question given that his children were in the house, Jackson eventually explained that he was there to pick up his children.

{¶12} Tensions between the men escalated when they began to argue about who should be the first to stand down, or "pull off." Jackson had two "brick[s]" or "boulders" on the floor of the back seat his SUV.[1] Jackson explained that he saw the bricks in the middle of Exchange Street several days earlier and decided to remove them to prevent motorists from damaging their vehicles. In the midst of his argument with Green, Jackson stated, "[g]et the f*** out of my face before I crack you with this [brick]." When Jackson grabbed a brick, Green started walking toward his own vehicle. Jackson then placed the brick on the front passenger's seat. Green opened the driver's door of his own vehicle, grabbed something, and then began walking back toward Jackson. As Green approached Jackson's SUV, it became apparent that Green had a gun.

---

[1] The items made of cement that Jackson referred to as "bricks" or "boulders" were admitted as exhibits at trial.

Jackson testified that Green walked up to the driver's door of Jackson's vehicle, where the window was open, and shot Jackson in the shoulder. During his testimony, Jackson explained that Green "just hauled off and shot [him.]" While Jackson was initially unaware of where he had been shot and whether the bullet had exited his body, he heard a window in his SUV shatter at the time of the shooting. Jackson further maintained that he did not grab the gun or attempt to knock it out of Green's hand.

{¶13} Jackson "played dead" to discourage Green from shooting him a second time. Jackson testified that as he played dead, his SUV was in neutral, and his vehicle slowly rolled backward into a tree. C.J. came out of the house. Green attempted to check Jackson's pulse and told C.J. to call the police. Jackson shifted his SUV into drive and rushed to the hospital. Jackson testified that he intentionally rammed his SUV into Green's parked car as he speeded away from the scene. Photographs taken at the hospital depicted where the bullet entered Jackson's body near his shoulder and then exited through his upper back. Detective Ronald Garey of the Akron Police Department testified that the glass located in the street at the scene did not appear to be a result of Jackson backing into the tree or ramming Green's vehicle as he exited the scene. When Jackson arrived at the hospital, he tossed the bricks into the rear compartment of his SUV prior to entering the hospital and seeking treatment.

## Discussion

{¶14} On appeal, Green does not dispute that Jackson suffered serious physical harm or that his gun inflicted that harm. Instead, Green maintains that this case involves an accidental discharge and the State failed to prove that he knowingly caused physical harm to Jackson.[2] Green

---

[2] While Green cites to his own testimony at trial in his merit brief, our analysis of whether the trial court erred in denying Green's motion for acquittal will be limited to the evidence presented by the State.

notes that Jackson acknowledged a tussle between the two men in his initial statement to police and that the evidence further showed that Green's gun had no external safety. Green also points to the fact that after his weapon discharged, he attempted to provide medical care, evidencing that he never intended to harm Jackson.

{¶15} We must construe the evidence in the light most favorable of the State when resolving a sufficiency challenge. *Jenks*, 61 Ohio St.3d at 279. In this case, the State presented evidence that during the midst of a heated argument, Green walked to his vehicle, retrieved a gun, and then walked back to Jackson's SUV and shot Jackson at close range. Jackson testified that Green "just hauled off and shot [him,]" insisting that he never tried to wrestle the gun away from Green and that he was no longer holding the brick at the time he was shot. This evidence, when construed in the light most favorable to the State, was sufficient to demonstrate that Green knowingly caused physical harm to Jackson on the night of the incident.

{¶16} Green's first assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED IN CONSIDERING AND ACCEPTING THE TESTIMONY OF OFFICER RONALD GAREY AS AN EXPERT WITNESS AS HIS CREDENTIALS AND TESTIMONY WERE NOT IN COMPLIANCE WITH EVID.R. 703 AND 705 AND LAW OF THE STATE OF OHIO.

{¶17} In his fourth assignment of error, Green contends that the trial court erred when it permitted Detective Garey to give expert testimony at trial. This Court agrees.

{¶18} A trial court's decision to admit or exclude testimony is reviewed for an abuse of discretion. *See State v. Pitts*, 9th Dist. Medina No. 17CA0060-M, 2018-Ohio-3216, ¶ 12. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶19}     Evid.R. 702 states:

A witness may testify as an expert if all of the following apply:

(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

(C) The witness' testimony is based on reliable scientific, technical, or other specialized information.  To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:

(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;

(2) The design of the procedure, test, or experiment reliably implements the theory;

(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.

{¶20}  Evid.R. 705 provides that "[t]he expert may testify in terms of opinion or inference and give the expert's reasons therefor after disclosure of the underlying facts or data.  The disclosure may be in response to a hypothetical question or otherwise."  Under Evid.R. 703, "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by the expert or admitted in evidence at the hearing."  Evid.R. 703.

{¶21}  Detective Garey was the last witness to testify on behalf of the State at trial.  At the outset, Detective Garey noted his experience as an officer, including his prior service as an accident reconstructionist in the traffic unit.  During the course of his testimony, he detailed the evidence that he encountered during the course of his investigation.  On the night of the incident, Detective Garey responded to the scene where he met Officer Dave White, who walked him around the scene and briefed him on the situation.  As he surveyed the scene, Detective Garey observed that there

was broken glass on the southeastern side of the street. Detective Garey further noticed that the glass on the street was some distance away from the spot of the alleged accident where Green's parked vehicle was located. Detective Garey testified that the location of the glass was "abnormal" because it was apparent that it "wasn't part of the accident scene" that was "contained up by where Mr. Green's car was."

{¶22} After speaking briefly with C.J. at the scene, Detective Garey drove to Akron City Hospital where he interviewed Jackson, and then subsequently went to the police station where he interviewed Green. Jackson and Green offered significantly different accounts of what transpired during the incident. During Detective Garey's testimony, the State introduced a video of his interview with Green at the police station as well as Officer White's body camera video. The video depicts Officer White speaking with Green at the scene, as well as officers conversing with each other about various matters, including the significance of the glass in the street. Although Green consistently maintained that Jackson played the role of the aggressor during the incident, Green's story wavered with respect to details of the incident, specifically in regard to where the men were positioned when the firearm discharged.

{¶23} On direct examination of Detective Garey, the State engaged in an inquiry about the significance of the location of the glass found in the street. A photo of a placard marking the glass for evidentiary purposes was introduced as an exhibit. Detective Garey explained that according to Jackson's statement, the glass was located "somewhere near" where the right rear tire of Jackson's SUV would have been when he backed out of the driveway. Thereafter, the following exchange occurred:

[The State:]     Okay. And how do you suppose the
                 glass gets there?

[Defense Counsel:]   Objection, Your Honor.

[The State:]   Let me rephrase it.

The Court:   Thank you.

[The State:]   What does your investigation reveal with regard to how the glass got there?

[Defense Counsel:]   Objection, same question.

The Court:   Exactly.

[The State:]   I'm sorry, Judge.

The Court:   Yeah, sustained.

[The State:]   What is the significance of the glass found around placard number five?

The Witness:   Well, somehow -- well, I think that when the gun went off --

[Defense Counsel:]   Objection.

The Court:   Overruled.

The Witness:   -- the bullet went through Donovan's left shoulder, out his trap, through the right rear window.

[The State:]   Was there any other explanation for how that glass got there?

[Defense Counsel:]   Objection.

The Court:   Overruled.

The Witness:   No.

{¶24}  Detective Garey further suggested that the location of the glass in question would not have been a result of Jackson's vehicle rolling backward into a tree, nor would it have been a

result of Jackson ramming Green's vehicle as he exited the scene. Detective Garey observed that based on the minimal amount of damage to the "B pillar" of Jackson's SUV, the glass in the street would not have resulted from the collision with Green's vehicle. On redirect examination, Detective Garey testified that Jackson's account of how he was positioned in the vehicle corresponded with the notion of the bullet passing through his shoulder as he was seated in the driver's seat and then shattered the right rear passenger window.

{¶25} On appeal, Green contends that the trial court erred when it allowed Detective Garey to provide expert testimony when he was not qualified as an expert under Evid.R. 703 and Evid.R. 705. Green notes that while Detective Garey briefly referenced his experience as an accident reconstructionist, he was not qualified to discuss the significance of the location of the glass or how the glass was shattered. Green stresses that Detective Garey's expert opinion was not supported by any type of specialized training or scientific methodology.

{¶26} At the outset of our discussion, we note that while Green states that trial counsel did not object to the testimony at trial, a review of the transcript reveals that defense counsel consistently objected to Detective Garey's testimony regarding the breakage of the glass. Accordingly, we conclude that Green has preserved the issue for appeal.

{¶27} We are compelled to sustain Green's assignment of error. The State correctly notes that a lay witness may offer opinions and inferences under Evid.R. 701 provided that the opinions are rationally based on their perception. *See State v. Morgan*, 9th Dist. Medina No. 07CA0124-M, 2008-Ohio-5530, ¶ 30. Here, however, Detective Garey's opinion regarding how the bullet passed through Jackson's body and shattered the window went well beyond inferences that were rationally based on his perceptions. Detective Garey briefly discussed his experience as an accident reconstructionist. Nevertheless, without any indication that his testimony was rooted in the

scientific method or any kind of specialized knowledge, Detective Garey offered a conclusive opinion as to what transpired in this case that was ostensibly based on an inferred understanding of where Jackson was seated at the time of the incident, the manner in which the bullet entered and exited Jackson's body, as well as where the bullet went after it exited Jackson's body. None of these inferences were rationally based on his perception of the crime scene.

{¶28} The trial court initially sustained objections to this line of questioning but ultimately relented. An opinion derived from an understanding of the location of a wound and the trajectory of a bullet amounts to expert testimony. *See generally State v. Fletcher*, 9th Dist. Summit No. 23838, 2008-Ohio-3105, ¶ 54. The expert testimony here built a bridge that spanned the gap from the narrative presented by the State to the conclusion endorsed by Detective Garey. As this case turned largely on the credibility of Jackson and Green, Detective Garey's testimony was highly prejudicial as it effectively corroborated Jackson's version of events. It follows that Green's fourth assignment of error is sustained.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN FINDING DEFENDANT GUILTY OF THE CHARGES AGAINST HIM AS THE CONVICTIONS WERE NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL.

## ASSIGNMENT OF ERROR III

APPELLANT WAS DENIED HIS RIGHT TO DUE PROCESS AND EFFECTIVE ASSISTANCE OF COUNSEL AS THE PERFORMANCE OF HIS TRIAL COUNSEL FELL BELOW [AN] ACCEPTABLE STANDARD AS ESPOUSED IN *STRICKLAND V. WASHINGTON* IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

## ASSIGNMENT OF ERROR V

THE TRIAL COURT ERRED IN CONSIDERING OR PERMITTING THE INTRODUCTION OF OFFICER DAVID WHITE'S BODY CAMERA AS STATE'S EXHIBIT 36 AS THE REQUIREMENTS FOR AUTHENTICATION AND ADMISSIBILITY UNDER CIV.R. 902 WERE NOT SATISFIED AND, FURTHER, THE CONTENT OF THE VIDEO WAS INADMISSIBLE HEARSAY WITH NO EXCEPTION UNDER EVID.R. 803.

## ASSIGNMENT OF ERROR VI

THE TRIAL COURT ERRED IN CONSIDERING THE EXPERT TESTIMONY PRESENTED BY OFFICER GAREY AS THE STATE FAILED TO COMPLY WITH THE REQUIREMENTS IMPOSED BY CRIM.R. 16(K).

{¶29} Green raises four additional assignments of error. As this Court's resolution of Green's fourth assignment of error is dispositive of this appeal, we decline to address the remaining assignments of error as they have been rendered moot. *See* App.R. 12(A)(1)(c).

III.

{¶30} Green's first assignment of error is overruled. The fourth assignment of error is sustained. This Court declines to address the second, third, fifth, and sixth assignments of error as they have been rendered moot. The judgment of the Summit County Court of Common Pleas is affirmed in part, reversed in part, and remanded for further proceedings consistent with this decision.

Judgment affirmed in part,
reversed in part,
and cause remanded.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

---

DONNA J. CARR
FOR THE COURT

HENSAL, J.
CONCURS.

TEODOSIO, P. J.
DISSENTING.

{¶31} Because I do not agree that Mr. Green properly preserved at trial his challenge on appeal to Detective Garey's testimony as improper expert testimony, I must respectfully dissent.

{¶32} "Error may not be predicated upon a ruling which admits * * * evidence unless a substantial right of the party is affected; and * * * [i]n case the ruling is one admitting evidence, a timely objection * * * appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context * * *." Evid.R. 103(A)(1).

**{¶33}** I disagree with the majority's determination that defense counsel's objections properly preserved the issue of improper expert testimony for appeal. Most of counsel's objections were only general in nature, leaving it entirely unclear whether the objections pertained to Evid.R. 701 et seq., or some other unspecified basis. *See, e.g., State v. Kuhar*, 9th Dist. Medina No. 15CA0053-M, 2016-Ohio-5280, ¶ 14; *State v. Jackson*, 9th Dist. Summit No. 28691, 2018-Ohio-1285, ¶ 29. Two of the objections were based on specific, but markedly different, bases than that which Mr. Green has now raised on appeal, e.g., "Objection, same question" and "Objection, Your Honor, speculative." *See, e.g., State v. Williams*, 9th Dist. Summit No. 22877, 2006-Ohio-4720, ¶ 17-18 (citing Evid.R. 103(A)(1) and declining to reach the merits of the assigned error, noting that the specific ground for objection raised at trial was not the same challenge later raised on appeal). *See also Krainz v. Wilson*, 9th Dist. Summit No. 16523, 1994 WL 273249, *4 (June 22, 1994) (stating that, if a party were permitted to raise one basis for an objection in the trial court and argue a different basis to the appellate court, the complaining party could deliberately raise a frivolous basis for objection upon the proffer of evidence and later raise a genuine argument whenever the ultimate result proves unsatisfactory). At no time during Mr. Green's trial did defense counsel object to Detective Garey's testimony as being improper expert testimony. I would therefore determine that that particular issue was not properly preserved for appeal and was, instead, forfeited. *See, e.g., State v. Thomas*, 9th Dist. Summit No. 27580, 2015-Ohio-5247, ¶ 8.

**{¶34}** Consequently, I would agree with Mr. Green's own concession in his merit brief that he did not properly object at trial to Detective Garey's testimony as improper expert testimony. I would then address Mr. Green's claim of plain error. Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of

justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.  Upon review, I would ultimately conclude that Mr. Green has not demonstrated plain error in this case.

{¶35}  Accordingly, I respectfully dissent.


APPEARANCES:

DAVID M. LOWRY, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.