[Cite as *State v. Green*, 2021-Ohio-2222.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

    v.

ENRIQUE D. GREEN

    Appellant

C.A. No.     29777

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 18 02 0495

DECISION AND JOURNAL ENTRY

Dated: June 30, 2021

HENSAL, Presiding Judge.

{¶1}    Enrique Green appeals from the judgment of the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2}    This is the second time Mr. Green has been before this Court to appeal his convictions for felonious assault, which he received after a bench trial. Briefly, Mr. Green was charged with two counts of felonious assault and accompanying firearm specifications after an altercation with the victim wherein the victim sustained a nonlethal gunshot wound to his shoulder. The victim testified that Mr. Green intentionally shot him after a verbal altercation, and Mr. Green testified that he accidentally discharged his firearm. The matter proceeded to a bench trial wherein the State presented evidence that supported the following narrative, which this Court set forth in *State v. Green*, 9th Dist. Summit No. 29120, 2019-Ohio-4967 ("*Green I*"):

During the early morning hours of February 2, 2018, Green traveled to the house of his girlfriend, C.J., in Akron, Ohio. C.J.'s two young children were staying with her that night.

[The victim], the father of the children, was scheduled to pick up the children at 6:00 AM. After patronizing a local bar and stopping for food at EuroGyro at approximately 3:00 AM, [the victim] decided that he would attempt to pick up his children early and he drove to C.J.'s house. Though he attempted to call C.J. to let her know that he was coming, she did not answer her phone. [The victim] testified that it was not unusual for him to arrive early, and sometimes he would sleep there until C.J. was ready to leave for work.

[The victim] parked his Ford Escape in the driveway and walked to the back of the house. [The victim] explained that there was a better chance that he could awake C.J. if he forcefully knocked on the back door. When he received no response, [the victim] returned to his SUV and backed out of the driveway into the street. At that time, he noticed Green walking toward his vehicle. While [the victim] acknowledged that he may have seen Green on a prior occasion, he did not know Green personally. Green approached the driver's side window and asked [the victim] what he was doing. Though [the victim] took exception to the question given that his children were in the house, [the victim] eventually explained that he was there to pick up his children.

Tensions between the men escalated when they began to argue about who should be the first to stand down, or "pull off." [The victim] had two "brick[s]" or "boulders" on the floor of the back seat [of] his SUV. [The victim] explained that he saw the bricks in the middle of Exchange Street several days earlier and decided to remove them to prevent motorists from damaging their vehicles. In the midst of his argument with Green, [the victim] stated, "[g]et the f*** out of my face before I crack you with this [brick]." When [the victim] grabbed a brick, Green started walking toward his own vehicle. [The victim] then placed the brick on the front passenger's seat. Green opened the driver's door of his own vehicle, grabbed something, and then began walking back toward [the victim]. As Green approached [the victim]'s SUV, it became apparent that Green had a gun. [The victim] testified that Green walked up to the driver's door of [the victim's] vehicle, where the window was open, and shot [the victim] in the shoulder. During his testimony, [the victim] explained that Green "just hauled off and shot [him.]" While [the victim] was initially unaware of where he had been shot and whether the bullet had exited his body, he heard a window in his SUV shatter at the time of the shooting. [The victim] further maintained that he did not grab the gun or attempt to knock it out of Green's hand.

[The victim] "played dead" to discourage Green from shooting him a second time. [The victim] testified that as he played dead, his SUV was in neutral, and his vehicle slowly rolled backward into a tree. C.J. came out of the house. Green attempted to check [the victim's] pulse and told C.J. to call the police. [The victim] shifted

his SUV into drive and rushed to the hospital. [The victim] testified that he intentionally rammed his SUV into Green's parked car as he speeded away from the scene. Photographs taken at the hospital depicted where the bullet entered [the victim's] body near his shoulder and then exited through his upper back. Detective Ronald Garey of the Akron Police Department testified that the glass located in the street at the scene did not appear to be a result of [the victim] backing into the tree or ramming Green's vehicle as he exited the scene. When [the victim] arrived at the hospital, he tossed the bricks into the rear compartment of his SUV prior to entering the hospital and seeking treatment.

*Id.* at ¶ 9-13.

{¶3} Mr. Green testified on his own behalf, providing a different version of the events. According to him, he went outside after hearing the knocking at the back door to see if the victim was ok. When he did, he saw the victim backing his SUV out of the driveway. The men exchanged words as the victim was still seated in his SUV, and the victim grabbed one of the bricks in his SUV and threatened to hit Mr. Green with it. Mr. Green assured the victim that he did not want any problems, but the victim got out of his SUV with the brick still in his hand. Mr. Green then started walking back toward his own car, intending to get in and drive home. The victim then approached him with the brick in his hand, so Mr. Green reached for the gun he kept in his car, which was already loaded with a bullet in the chamber. Mr. Green told the victim he was a CCW holder, and stepped back out of his vehicle. Mr. Green then pointed the gun at the victim's chest and – as the victim remained facing him – started walking the victim back toward the victim's SUV. The victim, who was still holding the brick, reached for Mr. Green's gun, making contact with his arm and causing the gun to go off. Mr. Green testified that he did not recall pulling the trigger, and that he did not fire his gun on purpose.

{¶4} Mr. Green testified that he immediately checked himself to see if he was shot. He then noticed that the victim was back inside his SUV with blood on his shoulder, so he approached the victim and asked if he was ok, telling him he was a paramedic and could help him. After

initially not responding, the victim put his car in reverse, struck Mr. Green's car with his SUV, and sped away. Mr. Green immediately called 911 and informed the operator that his weapon discharged.

{¶5} C.J. was the only other witness to some of these events. She testified that she went outside on the front porch and saw the victim and Mr. Green standing outside of the victim's SUV, which was in the street, talking. She testified that the victim was holding a brick in his hand, and that she did not see anything in Mr. Green's hands. She then went inside to get dressed, closed the door behind her, and heard a popping noise. C.J. did not see Mr. Green fire his gun. After hearing the popping noise, she went back outside and saw the victim strike Mr. Green's car door with his SUV before driving away.

{¶6} As detailed in *Green I*, Detective Ronald Garey responded to the scene. He testified that he observed glass in the street, which did not appear to be a result of the victim striking Mr. Green's car with his SUV, or from the victim backing his SUV into the tree. *Id.* at ¶ 13. Instead, he testified that the location of the glass in the street corresponded with the victim's version of the events insofar as the victim maintained that he was seated in his SUV at the time he was shot, and that he heard glass break as soon as he was shot. Another detective also testified, indicating that he test fired Mr. Green's gun. That detective testified that the gun had no external safety, and that it had an average trigger pull, requiring him to "purposely pull the trigger back" with an average amount of force in order to fire the gun.

{¶7} The trial court found Mr. Green guilty of both counts of felonious assault, as well as the accompanying firearm specifications. It determined that the felonious-assault counts were allied offenses, and – consistent with the State's election – sentenced Mr. Green for the felonious-assault count under Revised Code Section 2903.11(A)(1). *Id.* at ¶ 3.

{¶8} Mr. Green appealed his convictions in *Green I*, raising six assignments of error. This Court addressed the merits of two of his assignments of error, concluding that his convictions were supported by sufficient evidence, but that the trial court erred by permitting Detective Garey to provide expert testimony at trial. *Green I* at ¶ 15, 28. Regarding the latter, this Court reviewed Detective Garey's testimony about the significance of the glass found in the street, including his opinion that the bullet passed through the victim's body and shattered the rear window of the victim's vehicle. *Id.* at ¶ 23. We concluded that Detective Garey's opinion in this regard amounted to expert testimony, and that it was highly prejudicial to Mr. Green since it corroborated the victim's version of the events, including the victim's testimony that he was seated in his SUV when Mr. Green shot him. *Id.* at ¶ 27-28. We then declined to address the remaining assignments of error on the basis that they were moot, and affirmed in part, reversed in part, and remanded the matter for further proceedings. *Id.* at ¶ 30.

{¶9} On remand, the trial court issued a new judgment entry, indicating that it "did not consider, and does not consider, Detective Garey's testimony as expert testimony regarding: where [the victim] was seated at the time he was shot; the bullet trajectory; where the bullet exited [the victim's] body; where the bullet went after it exited [the victim's] body; how the glass broke; when the glass broke; the significance of the glass in the road; and, his interpretation of events due to the location of the glass in road." It then reaffirmed Mr. Green's convictions and sentence. Mr. Green now appeals that decision, raising three assignments of error for this Court's review.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN FINDING DEFENDANT GUILTY OF THE CHARGES AGAINST HIM AS THE CONVICTIONS WERE NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL.

{¶10} In his first assignment of error, Mr. Green argues that his convictions are against the manifest weight of the evidence. He primarily argues that the victim's testimony was unreliable, and that the victim's testimony coupled with the absence of Detective Garey's testimony as expert testimony establishes that his convictions are not supported by the weight of the evidence. This Court disagrees.

{¶11} When considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Weight of the evidence pertains to the greater amount of credible evidence produced in a trial to support one side over the other side. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). An appellate court should only exercise its power to reverse a judgment as against the manifest weight of the evidence in exceptional cases. *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340.

{¶12} Notably, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts[,]" who is "free to believe all, part, or none of the testimony of each witness." *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus; *Prince v. Jordan*, 9th Dist. Lorain No. 04CA008423, 2004-Ohio-7184, ¶ 35. "This Court will not overturn the trial court's verdict on a manifest weight of the evidence challenge only because the trier of fact chose to believe certain witness testimony over the testimony of others." *State v. Clark*, 9th Dist. Medina No. 18CA0093-M, 2019-Ohio-4303, ¶ 13, quoting *State v. Hill*, 9th Dist. Summit No. 26519, 2013-Ohio-4022, ¶ 15.

**{¶13}** As Mr. Green points out in his merit brief, the testimony at trial varied among the witnesses as to where the two men were positioned when the victim was shot. Mr. Green asserts that this is perhaps the most relevant and important issue surrounding his convictions. He argues that C.J.'s testimony corroborated his version of the events, while the victim's version of the events varied, and the victim's testimony was otherwise not credible.

**{¶14}** Initially, we note that C.J.'s testimony was of limited value because she did not see the shooting. Her testimony corroborated Mr. Green's testimony to the extent she testified that the victim was standing outside of his SUV with a brick in his hand immediately prior to the shooting. While her testimony in that regard undermines the victim's insistence that he never got out of his SUV, the fact remains that she did not see the shooting. C.J., therefore, could not corroborate Mr. Green's assertion that the victim reached for his gun, made contact with his arm, and that he accidentally discharged his firearm.

**{¶15}** More importantly, Mr. Green's testimony at trial differed from his prior statements to the police regarding where the men were positioned when his firearm discharged. At the scene, Mr. Green told an officer that he was pretty sure that he (Mr. Green) was in his vehicle when he shot the victim. Then, when interviewed at the police station, Mr. Green indicated that he was not sure whether he (Mr. Green) was inside or outside of his vehicle when he shot the victim. Then, at trial, Mr. Green testified that he was outside of his vehicle, walking toward the victim with his gun pointed at the victim's chest, when his firearm discharged. During cross examination, the State pointed out these inconsistencies. On re-direct examination, Mr. Green testified that he told the officer at the scene that he (Mr. Green) was in his vehicle when he shot the victim because he was confused and scared. The trial court, therefore, had reason to question Mr. Green's version of the events.

{¶16} While inconsistencies in the victim's testimony, as well as C.J.'s corroboration of some of Mr. Green's testimony, certainly affect the victim's credibility, the critical issue the trial court had to decide was whether to believe Mr. Green's testimony that he accidentally fired his gun, and whether the evidence supported that version of the events. Much of Mr. Green's argument on appeal centers on the victim's behavior, including his assertion that the victim approached him in a threatening manner and moved the bricks to the trunk of his SUV after the shooting. Yet Mr. Green did not argue that he acted in self-defense. Simply put, the trial did not have to accept the victim's version of the events in its entirety in order to find Mr. Green guilty of the charged offenses. *See Prince,* 2004-Ohio-7184, at ¶ 35 (noting that the trier of fact is "free to believe all, part, or none of the testimony of each witness."). Mr. Green admitted that he retrieved a loaded gun from his car, pointed it at the victim's chest, and that he must have pulled the trigger. We again note that, according to the detective who test fired that gun during the investigation, the detective had to "purposely pull the trigger back" with an average amount of force in order to fire the gun.

{¶17} A determination of whether Mr. Green fired his gun by accident hinged upon Mr. Green's credibility, which the trial court was in the best position to assess. *State v. Kibble*, 9th Dist. Lorain No. 20CA011630, 2020-Ohio-5560, ¶ 15 ("[T]his Court is mindful of the well-established principle that a trier of fact enjoys the best position to assess the credibility of witnesses."). Here, the trial court chose not to believe Mr. Green's testimony that he accidentally fired his gun. That, by itself, does not equate to a manifest miscarriage of justice, and this Court will not substitute its credibility determination for that of the trial court. *State v. Frashuer*, 9th Dist. Summit No. 24769, 2010-Ohio-634, ¶ 18 ("[T]he mere fact that the jury chose to disbelieve much of [the defendant's] testimony does not equate to a manifest miscarriage of justice."); *State*

*v. Morrison,* 9th Dist. Summit No. 21687, 2004-Ohio-2669, ¶ 56 ("This Court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless we conclude that the factfinder clearly lost its way.").

{¶18} We remain mindful of our decision in *Green I* wherein this Court determined that Detective Garey's expert testimony was highly prejudicial. *Green I* at ¶ 28. However, even without Detective Garey's testimony (lay or expert), including his testimony regarding the significance of the glass in the street or his opinion regarding the trajectory of the bullet (and the inferences drawn therefrom), this Court cannot say that Mr. Green has established that this is the exceptional case where the evidence weighs heavily against his convictions. Mr. Green's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN CONSIDERING OR PERMITTING THE INTRODUCTION OF OFFICER DAVID WHITE'S BODY CAMERA AS STATE'S EXHIBIT 36 AS THE REQUIREMENTS FOR AUTHENTICATION AND ADMISSIBILITY UNDER EVID. R. 901 OR 902 WERE NOT SATISFIED AND, FURTHER, THE CONTENT OF THE VIDEO WAS INADMISSIBLE HEARSAY WITH NO EXCEPTION UNDER EVID.R. 803.

{¶19} In his second assignment of error, Mr. Green asserts that the trial court committed plain error by allowing an officer's bodycam video into evidence when that officer did not testify at trial, and when that evidence was otherwise not authenticated. He also argues that the contents of the bodycam video constituted inadmissible hearsay. For the reasons that follow, we conclude that Mr. Green has failed to establish that the trial court committed plain error.

{¶20} "To establish plain error, a defendant must show that (1) there was an error or deviation from a legal rule, (2) the error was plain and obvious, and (3) the error affected the outcome of the trial." *State v. Mohamed*, 151 Ohio St.3d 320. 2017-Ohio-7468, ¶ 26, citing, *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). "As notice of plain error is to be taken with utmost caution

and only to prevent a manifest miscarriage of justice, the decision of a trial court will not be reversed due to plain error unless the defendant has established that the outcome of the trial clearly would have been different but for the alleged error." *State v. West*, 9th Dist. Summit No. 27485, 2015-Ohio-2936, ¶ 46, quoting *State v. Horton*, 9th Dist. Summit No. 26407, 2013-Ohio-3902, ¶ 50.

{¶21} Here, Mr. Green asserts that the admission of the officer's bodycam video was "extremely prejudicial[,]" but offers no argument in support of the prejudice component of his plain-error argument. *See* App.R. 16(A)(7) (requiring an appellant's brief to contain "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies."). In other words, he has not argued that, but for that evidence, he would not have been convicted of the charged offenses. *See West* at ¶ 46. Thus, even assuming the trial court erred by allowing the officer's bodycam video into evidence, Mr. Green has failed to establish plain error on appeal. *Id.* at ¶ 46-48 (holding that, even assuming the trial court erred by allowing certain testimony into evidence, the appellant failed to establish that the outcome of the trial would have been different but for that evidence); *see Mahoney v. Mahoney*, 9th Dist. Medina No. 16CA0061-M, 2017-Ohio-7917, ¶ 9 ("It is the appellant's burden to affirmatively demonstrate error on appeal."). Accordingly, Mr. Green's second assignment of error is overruled.

ASSIGNMENT OF ERROR III

> THE TRIAL COURT ERRED WHEN IT PERMITTED DETECTIVE GAREY'S HIGHLY PREJUDICIAL AND INCOMPETENT TESTIMONY TO BE ENTERED INTO EVIDENCE. NOTWITHSTANDING THE TRIAL COURT'S CLAIM THAT IT DID NOT CONSIDER THE TESTIMONY, IT AFFIRMATIVELY APPEARS FROM THE RECORD THE TRIAL COURT PERCEIVED DETECTIVE GAREY'S TESTIMONY TO BE PROFFERED AS

AN EXPERT. SINCE IT IS IMPOSSIBLE TO DETERMINE HOW MUCH WEIGHT WAS GIVEN TO THIS IMPROPER EVIDENCE, THE CONVICTION MUST BE REVERSED AND THE CASE REMANDED.

{¶22} In his third assignment of error, Mr. Green argues that, despite the trial court's assertion that it did not rely upon Detective Garey's testimony as expert testimony, the record affirmatively demonstrates that the trial court did, and that it continued to do so after this Court's remand. Mr. Green acknowledges the case law providing that, in a bench trial, the trial court is presumed to consider only relevant, material, and competent evidence, but argues that this case falls within an exception to that general rule because the record affirmatively demonstrates otherwise. Mr. Green argues that it is impossible to determine the weight the trial court continued to afford that testimony, and that this Court must remand the matter.

{¶23} In response, the State argues that the trial court expressly stated on remand that it did not rely on Detective Garey's testimony as expert testimony. It argues that Mr. Green's reliance on "[i]ndicia and inferences" in the record to support his position that the trial court considered, and continued to consider, Detective Garey's testimony as expert testimony is not sufficient, and that the trial court's order on remand could not have been clearer.

{¶24} Initially, we note that this Court has already decided that sufficient evidence existed to support Mr. Green's convictions. *Green I*, 2019-Ohio-4967, at ¶ 14-16. This Court has also already decided that the trial court erred by permitting Detective Garey to offer an opinion "as to what transpired in this case that was ostensibly based on an inferred understanding of where [the victim] was seated at the time of the incident, the manner in which the bullet entered and exited [the victim's] body, as well as where the bullet went after it exited [the victim's] body[,]" since "[n]one of th[o]se inferences were rationally based on his perception of the crime scene." *Id.* at ¶ 27. While we are mindful of the fact that the trial court on remand stated that it never relied upon

Detective Garey's testimony as expert testimony, that does not alter this Court's decision in *Green I* wherein we concluded that the trial court erred by allowing Detective Garey to provide expert testimony. *Id.* at ¶ 28. This Court's focus now, however, is on whether the trial court relied on Detective Garey's testimony as expert testimony after this Court's remand.

{¶25} This Court is required to determine the merits of this appeal by the record before us, and the arguments presented. App.R. 12(A)(1)(b). As Mr. Green acknowledges, when considering a criminal case tried to the bench, an appellate court presumes that the trial court only considered relevant, material, and competent evidence unless it affirmatively appears to the contrary. *State v. Fautenberry*, 72 Ohio St.3d 435, 439 (1995). Despite Mr. Green's arguments, we cannot say that it affirmatively appears that the trial court relied upon Detective Garey's testimony as expert testimony after this Court's remand. A trial court speaks through its journal entries, and the trial court specifically indicated that it did not. *State v. Jones*, 9th Dist. Lorain No. 15CA010801, 2017-Ohio-1181, ¶ 7 ("It is axiomatic that a court speaks through its journal entries.").

{¶26} Moreover, Mr. Green's argument presupposes that the trial court could not have found him guilty absent its consideration of Detective Garey's testimony as expert testimony. As explained in our resolution of Mr. Green's second assignment of error, Mr. Green has not established that his convictions are against the manifest weight of the evidence even without Detective Garey's testimony to corroborate the victim's version of the events.

{¶27} Mr. Green is correct in that there is no way of knowing how much weight a trier of fact affords certain evidence. But, under these facts and in light of the trial court's judgment entry on remand, Mr. Green has not overcome the presumption that the trial court only relied upon

relevant, material, and competent evidence on remand. Mr. Green's third assignment of error is overruled.

## III.

{¶28} Mr. Green's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

TEODOSIO, J.
<u>CONCURS IN JUDGMENT ONLY.</u>

SUTTON, J.
<u>CONCURS IN JUDGMENT ONLY.</u>


<u>APPEARANCES:</u>

DAVID M. LOWRY, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.